**GRIDLEY ASSOCIATES, LTD., Petroleum Management, Inc., and Vernon G.W. Dickman, Plaintiffs and Appellees,**

v.

**TRANSAMERICA INSURANCE COMPANY, Defendant and Appellant.**

No. 910121–CA.

Court of Appeals of Utah.

March 18, 1992.

Kenneth A. Okazaki, Barbara K. Berrett, Purser, Okazaki & Berrett, Salt Lake City, for defendant and appellant.

Neil H. Selman (argued), admitted pro hac vice, Selman, Breitman & Burgess, Los Angeles, Cal., for defendant and appellant.

Stephen B. Mitchell (argued), Burbidge & Mitchell, Salt Lake City, for plaintiffs and appellees.

OPINION

Before GARFF, GREENWOOD and RUSSON, JJ.

RUSSON, Judge:

Transamerica Insurance Company appeals the district court's order granting partial summary judgment in favor of Gridley Associates. We affirm.

I. FACTS

Gridley Associates, Ltd. (Gridley), a Utah limited partnership with its principal place of business in Salt Lake County, Utah, owned a self-service gasoline station in Gridley, California. From November 1985 through February 1986, the station recorded gasoline shortfalls totaling 11,839 gallons between the volume of regular, leaded gasoline actually sold and the volume pur-

chased and placed in its underground storage tank.

Fearing a leak in the system, Gridley employed Dockendorf Equipment Co. (Dockendorf) in early February 1986 to check the leaded fuel system at the gasoline station. Upon testing the system, Dockendorf determined that there was a gasoline leak resulting from a broken pipe which connected a gasoline storage tank with the gasoline dispensers. The uncontroverted evidence before the court below was that the break in the pipe was a "clean break" that "would have had to have been caused by an adjustment of the area in which it is in." Consequently, every time the gasoline pump was activated, gasoline discharged underground.

Dockendorf repaired the leak in the gasoline line in February 1986. However, large quantities of gasoline were discovered the following month on property adjacent to the gasoline station. Thereafter, governmental agencies required Gridley to undertake an extensive cleanup program.

In March 1986, Gridley filed an insurance claim for costs of the cleanup under its policy of insurance issued by Transamerica Insurance Company (Transamerica). Coverage for liability to third persons was provided under the policy in three sections: (1) Comprehensive General Liability, (2) Garage Insurance, and (3) Commercial Umbrella Policy Declaration. Coverage extended from February 7, 1985 to March 7, 1986.

With respect to the comprehensive general liability and commercial umbrella coverages, the policy contained the following exclusion:

This insurance does not apply:

....

to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gases, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

With respect to the garage insurance provision, the policy contained the following exclusion:

This insurance does not apply:

....

to bodily injury or property damage caused by the dumping, discharge or escape of irritants, pollutants or contaminants. This exclusion does not apply if the discharge is sudden and accidental.

Initially, Transamerica determined that Gridley's claim was covered under the "garage" provision of the policy and advised Gridley in May 1986 that Transamerica would pay the cleanup costs of the spill.

In October 1986, Transamerica issued Gridley a check for $23,473.49 for cleanup costs that had been billed to date. However, at that same time, Transamerica reversed its position and advised Gridley that cleanup costs were not covered due to the pollution exclusions in the comprehensive and umbrella sections of the policy. Consequently, Gridley filed suit against Transamerica, seeking a determination of coverage, as well as damages.

In April 1989, Transamerica filed a motion for partial summary judgment, claiming that the gasoline spill was not covered under Transamerica's policy because it was not "sudden," as required by the language of the pollution exclusion. Gridley responded by claiming that the gasoline spill was sudden because the uncontroverted evidence before the court was that the break was a "clean break." The district court denied Transamerica's motion and ruled that, as a matter of law, the gasoline spill was "sudden."

Thereafter, Gridley and Transamerica entered into a settlement agreement wherein Transamerica agreed to pay a minimum agreed amount toward the cleanup costs of the spill, while reserving the right to appeal the district court's ruling in the event the cleanup costs exceeded the agreed settlement amount.

The cleanup costs exceeded the agreed amount, and Transamerica exercised its

right to appeal the district court's ruling. Accordingly, the parties stipulated to the entry of a final judgment in favor of Gridley. Consistent with the stipulation, the district court entered partial summary judgment in favor of Gridley, ruling that Transamerica was liable for coverage for the costs of the spill. It is from this judgment that Transamerica appeals.

The parties agree that the sole issue on appeal is whether the trial court properly granted summary judgment in favor of Gridley, holding that Transamerica is liable for coverage for the costs of the gasoline spill based on its prior ruling that the discharge was "sudden."

## II. STANDARD OF REVIEW

On review of a grant of summary judgment, our inquiry is "whether there is any genuine issue as to any material fact, and if there is not, whether the plaintiffs are entitled to judgment as a matter of law." *Thornock v. Cook*, 604 P.2d 934, 936 (Utah 1979) (citations omitted). Since summary judgment presents for review conclusions of law only, because, by definition, summary judgments do not resolve factual issues, we review those conclusions for correctness, according no deference to the trial court. *Bonham v. Morgan*, 788 P.2d 497, 499 (Utah 1989).

## III. ANALYSIS

The pollution exclusion in Gridley's policy provides, with our emphasis:

This insurance does not apply

. . . .

to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gases, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*

Transamerica contends that the trial court erred in granting summary judgment in favor of Gridley on the basis of its conclusion that the discharge of gasoline was "sudden." Transamerica urges that the gasoline spill was not "sudden" because it continued for an extended period of time. Gridley, on the other hand, argues that the gasoline spill was "sudden" as required by the policy, arguing that the clean break in the line resulted in a "sudden" discharge of gasoline. Gridley, therefore, seeks affirmance of the district court's grant of summary judgment. Accordingly, in order to decide whether the gasoline spill is covered under Gridley's policy, we must determine as a matter of law whether the gasoline discharge was "sudden" as used in the pollution exclusion.

Initially, we must decide whether the term "sudden" as used in the insurance policy is ambiguous. "Whether ambiguity exists in a contract is itself a question of law." *Crowther v. Carter*, 767 P.2d 129, 131 (Utah App.1989) (citing *Faulkner v. Farnsworth,* 665 P.2d 1292, 1293 (Utah 1983)). Thus, we review the district court's conclusion that the term "sudden" is not ambiguous for correctness.

The question of whether the term "sudden" is ambiguous is an issue of first impression in Utah; therefore, we look to other states' decisions on this matter for assistance. In interpreting the "sudden and accidental" exception to. pollution exclusion clauses, courts in several other jurisdictions have held that use of the term "sudden" is clear and unambiguous. For example, in *United States Fidelity and Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir.1988), the Sixth Circuit stated: "We believe the everyday meaning of the term 'sudden' is exactly what this clause means. We do not believe that it is possible to define 'sudden' without reference to a temporal element that joins together conceptually the immediate and the unexpected." *Id.* at 34; *accord FL Aerospace v. Aetna Casualty & Sur. Co.*, 897 F.2d 214, 219 (6th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990).

Further, in *United States Fidelity & Guar. Co. v. Morrison Grain Co.*, 734

F.Supp. 437 (D.Kan.1990), the court held that: "The terms, 'sudden and accidental,' are unambiguous. As commonly used, the meaning of 'sudden' combines both elements of without notice or warning and quick or brief in time.... Sudden connotes a 'temporal aspect of immediacy, abruptness, swiftness, quickness, instantaneousness and brevity.' " *Id.* at 446 (quoting *C.L. Hauthaway & Sons v. American Motorists Ins.*, 712 F.Supp. 265, 268 (D.Mass. 1989) (citations omitted)).

Moreover, the Supreme Court of Massachusetts has held:

For the word "sudden" to have any significant purpose, and not to be surplusage when used generally in conjunction with the word "accidental," it must have a temporal aspect to its meaning, and not just the sense of something unexpected. We hold, therefore, that when used in describing a release of pollutants, "sudden" in conjunction with "accidental" has a temporal element. The issue is whether the release was sudden. The alternative is that it was gradual. If the release was abrupt and also accidental, there is coverage for an occurrence arising out of the discharge of pollutants.

*Lumbermens Mut. Casualty Co. v. Belleville Indus., Inc.*, 407 Mass. 675, 555 N.E.2d 568, 572 (1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992). This court adopts the reasoning of the above courts holding that the term "sudden" has a plain, unambiguous meaning.[1] While the word connotes a sense of unexpectedness, "sudden" within the "sudden and accidental" clause cannot be defined without reference to a temporal element, specifically immediacy, abruptness, and quickness.[2]

■ Applying this rationale to the facts of this case, it is clear that the district court properly concluded that the gasoline discharge was "sudden" so as to fit within the exception to the pollution exclusion. The uncontroverted fact before the district court was that the break in the gasoline line was a "clean break" that "would have had to have been caused by an adjustment of the area in which it is in." No evidence was ever presented that the break was caused by corrosion or deterioration which would have resulted in a gradual drip or trickle of gasoline from the line. The clean break certainly resulted in an unexpected as well as an immediate and abrupt flow of gasoline from the severed line every time the pump was activated. Accordingly, the trial court correctly concluded that the discharge was "sudden" under Gridley's policy.

■ Moreover, Transamerica's argument that the discharge could not possibly have been "sudden" because the spill lasted for an extended period of time is without merit. While the record in this case indicates that although the break in the line occurred in approximately November 1985 and was not discovered by Gridley until early February 1986, the explicit language of Gridley's policy only requires that the discharge itself be "sudden" in order to be covered under the policy. The "length of time that elapse[s] before the leak [is] discovered is irrelevant, as to the suddenness of the discharge." *Wagner v. Milwaukee Mut. Ins. Co.*, 145 Wis.2d 609, 427 N.W.2d 854, 857 (Wis.App.1988); overruled on other grounds, *Just v. Land Reclamation, Ltd.*, 155 Wis.2d 737, 456 N.W.2d 570 (Wis.1990). For instance, if an accident causes a break in a very large oil line in a remote area which spills large amounts of oil onto the

---

**1.** We note, however, that courts in other jurisdictions have found that the term "sudden" is ambiguous when used within an exception to a pollution exclusion. *See, e.g., Broadwell Realty Servs., Inc. v. Fidelity and Casualty Co. of New York,* 218 N.J.Super. 516, 528 A.2d 76 (1987); *United Pac. Ins. Co. v. Van's Westlake Union, Inc.,* 34 Wash.App. 708, 664 P.2d 1262 (1983). Nonetheless, those cases that hold that the term is unambiguous present the more well-reasoned view, and thus we adopt that approach.

**2.** Further support for this definition is found in the American College Dictionary, which defines "sudden" as "happening, coming, made or done quickly, without warning or unexpectedly; abrupt." American College Dictionary 1209 (1970). *See also* Webster's Third New Int'l Dictionary 2284 (1961).

ground, the fact that the oil spill remains undetected for a period of time does not render the discharge of oil any less "sudden." Accordingly, in the case at bar, where there was damage to a line which caused an immediate spill of gasoline into the ground that remained undiscovered by Gridley for some months, the discharge itself was still "sudden" as contemplated by the exception to the pollution exclusion.

## IV. CONCLUSION

The discharge of gasoline was "sudden" as to qualify within the exception to the pollution exclusion. Therefore, we affirm the trial court's grant of summary judgment in favor of Gridley Associates holding that the costs for the gasoline spill cleanup are covered under the insurance policy.

GARFF and GREENWOOD, JJ., concur.