962 F.2d 1484
 35 ERC 1570, 60 USLW 2747, 22 Envtl.
L. Rep. 21,446
 HARTFORD ACCIDENT & INDEMNITY COMPANY, a Connecticut
corporation, Plaintiff/Counter-Claim Defendant/Appellee,
v.
U.S. FIDELITY AND GUARANTY COMPANY, a Maryland corporation;
Commercial Union Insurance Companies, a
Massachusetts corporation, Defendants,
and
El Paso Natural Gas Company, a Delaware corporation,
Defendant/Counter-Claimant/Appellant.
Interstate Natural Gas Association of America; Insurance
Environmental Litigation Association; John
Richard Ludbrooke Youell, Amici Curiae.
 No. 91-4057.
 United States Court of Appeals,
Tenth Circuit.
 April 30, 1992.
 
 Alan L. Sullivan (R. Stephen Marshall and William R. Richards, with him, on the briefs), Van Cott, Bagley, Cornwall, & McCarthy, Salt Lake City, Utah, for defendant, counter-claimant/appellant.
 Joy L. Clegg (Paul C. Droz, Snow, Christensen & Martineau, Salt Lake City, Utah, and James C. Martin, Crosby, Heafey, Roach & May, Oakland, Cal., with her, on the briefs), Snow, Christensen & Martineau, Salt Lake City, Utah, for plaintiff, counter-claim-defendant, appellee.
 Mark D. Colley, M. Roy Goldberg, and Richard P. Holme, Davis, Graham & Stubbs, and John H. Cheatham, III and Jean E. Sonneman, Interstate Natural Gas Ass'n of America, Washington, D.C., on the brief, for amicus curiae Interstate Natural Gas Ass'n of America.
 Thomas W. Brunner, Marilyn E. Kerst, and Sharon Rau Dissinger, Wiley, Rein & Fielding, Washington, D.C., on the brief, for amicus curiae Ins. Environmental Litigation Ass'n.
 David J. Richman, Coghill & Goodspeed, Denver, Colo., on the brief, for amicus curiae John Richard Ludbrooke Youell.
 Before MOORE and McWILLIAMS, Circuit Judges, and HUNTER, District Judge.*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This insurance dispute between El Paso Natural Gas Company and Hartford Accident & Indemnity Corporation involves liability for the cleanup of El Paso's gas transmission system. Hartford brought an action for declaratory relief, and subsequently Hartford and El Paso both moved for summary judgment to determine whether Hartford's comprehensive general liability insurance excluded coverage of continuous pollution. The District Court for the District of Utah found the pollution exclusion clause precluded coverage for pollution except when discharges were both sudden and accidental. Hartford Accident & Indem. Corp. v. United States Fidelity & Guar. Co., 765 F.Supp. 677 (D.Utah 1991) (Hartford v. USF & G ). The court awarded summary judgment to Hartford, finding "sudden and accidental" was unambiguous and meant occurring without notice and happening by chance. Id. at 680. El Paso appeals the court's grant of summary judgment to Hartford and denial of El Paso's summary judgment motion.[1] We construe "sudden and accidental" under Utah law to mean temporally abrupt and unexpected or unintended, and affirm the district court's judgment that continuous or routine discharges of pollutants are not covered.
 
 I. Facts
 
 2
 From 1959 to 1974, El Paso operated a gas transmission system traversing Washington, Oregon, Idaho, Wyoming, Utah, Colorado, and New Mexico. While operating the system, El Paso used an air compressor lubricating oil later found to have contained a polychlorinated biphenyl (PCB). El Paso dumped condensed liquid wastes containing PCBs into unlined earthen pits, and directly onto the ground. Lubricant containing PCBs was deposited in the same way. Some of the pits had overflow pipes which carried the contaminated wastes into the surrounding environment.
 
 
 3
 Hartford insured El Paso under a general liability policy from January 1, 1976, to January 1, 1986. El Paso sold the pipeline system to Northwest Pipeline Corporation in 1974, agreeing to indemnify Northwest for any liability arising from El Paso's activities prior to the transfer. In 1987, Northwest discovered the PCB contamination and reported it to the Environmental Protection Agency. Northwest cleaned the contaminated sites pursuant to consent orders with the EPA, sued El Paso, and settled for $6.6 million. El Paso then demanded indemnification from Hartford under its comprehensive general liability policy. Hartford refused and brought this declaratory judgment action against El Paso on the grounds the policy's pollution exclusion precluded coverage of contamination that was not both sudden and accidental.[2]
 
 II. Jurisdiction and Standard of Review
 
 4
 We have diversity jurisdiction, 28 U.S.C. § 1332(a)(1), and we apply Utah substantive law. See Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). We review the district court's construction of the contract as an issue of law de novo. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). See also Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Continental Ins. Co., 891 F.2d 772, 774 (10th Cir.1989). When an insurance policy is equivocal, it must be interpreted in favor of the insured. In the absence of ambiguity, however, "an unambiguous insurance contract, like any other contract, should be enforced as written." Young v. Fidelity Union Life Ins. Co., 597 F.2d 705, 707 (10th Cir.1979). Whether ambiguity exists is a question of law. Crowther v. Carter, 767 P.2d 129, 131 (Utah App.1989). We accord insurance terms their ordinary usage and connotations, being "obliged to assume that language included therein was put there for a purpose, and to give it effect where its meaning is clear and unambiguous." Marriot v. Pacific Nat'l Life Assurance Co., 24 Utah 2d 182, 467 P.2d 981, 983 (1970).
 
 III. The Policies
 
 5
 Hartford's general liability policies provided Hartford would pay "on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which the insurance applies, caused by an occurrence...." "Occurrence" was defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (emphasis added).
 
 
 6
 The policies each contained a "pollution exclusion" providing insurance would not cover:
 
 
 7
 bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any watercourse or body of water; but this exclusion, except with respect to coastal waters, does not apply if such discharge, dispersal, release or escape is sudden and accidental.
 
 
 8
 (emphasis added).
 
 
 9
 The parties agree El Paso was unaware its lubricating oil contained PCB contaminants. El Paso intentionally discharged oil and water into disposal pits; it did not expect or intend that water in or leaving the pits would contain PCBs. The parties dispute the construction of the contract, and specifically how to apply "sudden and accidental" to a "discharge, dispersal, release or escape" of pollutants.
 
 
 10
 El Paso argues (1) "sudden and accidental" is ambiguous, and ambiguities in insurance contracts are construed in favor of the insured; (2) "sudden and accidental" means "unexpected or unintended," and since it did not expect or intend PCB contaminants to migrate into the environment, the damage is insured; and (3) "sudden and accidental" relates not to the initial and continuous discharges of its waste material but to the resulting unintended PCB damage. El Paso also contends the history of comprehensive general liability policies demonstrates only intentional polluters were to be excluded from coverage.
 
 
 11
 Hartford answers "sudden and accidental" (1) is unambiguous and necessarily implies temporality, and (2) relates to El Paso's routine discharges and not to the damage caused by the discharged waste. Hartford argues El Paso's intentions and knowledge of PCB contamination are immaterial, and the discharge itself must be both unexpected or unintended (accidental) and abrupt or immediate (sudden). Hartford further argues El Paso's documentation through extrinsic evidence of the intentions of the insurance industry in drafting the pollution exclusion is irrelevant because the policy is clear on its face.
 
 A. Sudden and Accidental
 
 12
 Liability for continuous polluting events is the subject of intense national debate, and there is a wide range of authority to which both parties have cited. The Utah Supreme Court has not yet considered the meaning of "sudden and accidental" in the context of the pollution exclusion. In such a case of first impression, our responsibility is to give the clause the interpretation we believe the Utah court would. We are informed by decisions of the Utah appellate courts and by precedent of federal courts in this and other circuits.[3] We review the district court's interpretation of Utah law de novo. Salve Regina, 111 S.Ct. at 1221.
 
 
 13
 Most courts agree "accidental" means unexpected or unintended. In American Motorists Ins. Co. v. General Host Corp., 946 F.2d 1482 (10th Cir.1991), construing Kansas law, we noted "[t]here is a sharp division of authority on the issue of whether pollution that occurs over an extended period of time is 'sudden' within the meaning of the pollution exclusion.... However, we have found no similar division of authority concerning the meaning of the term 'accidental.' The courts have interpreted 'accidental' to refer to pollution which is not expected or intended by the insured." Id. at 1486.[4] Similarly, in EAD Metallurgical, Inc. v. Aetna Casualty & Sur. Co., 905 F.2d 8 (2d Cir.1990), where EAD continuously deposited radioactive substances into sewer lines in a New York town, the court stated pollution damage "resulting from purposeful conduct, cannot be considered 'accidental.' " Id. at 11 (citing Powers Chemco, Inc. v. Federal Ins. Co., 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989)). See also Great Lakes Container Corp. v. National Union Fire Ins. Co., 727 F.2d 30, 33-34 (1st Cir.1984) (coverage excluded where pollution and contamination of the soil, surface, and subsurface waters allegedly occurred as a concomitant of regular business activity).
 
 
 14
 El Paso argues most cases where coverage is excluded involve not only gradual or long-term pollution but also intentional polluting acts. While this is true in cases which have failed the "accidental" requirement,[5] the argument assumes we will read sudden synonymously with accidental or unintentional. El Paso no doubt believes "[t]he central inquiry should not be whether the pollution occurred over a long period of time, but whether the insured knew about it or intended it." (Brief of Defendant-Appellant El Paso Natural Gas Company at 35). The contract, however, treats "sudden" and "accidental" as coextensive requirements, which we weigh equally.
 
 
 15
 The principal authority on which El Paso relies is New Castle County v. Hartford Accident & Indem. Co., 933 F.2d 1162 (3d Cir.1991). The New Castle County court found authority for the interpretation of "sudden and accidental" split evenly between those courts barring coverage and holding "sudden" means abrupt or brief, and those holding in favor of the insured on the grounds "sudden and accidental" is ambiguous and means unexpected or unintended. New Castle County, 933 F.2d at 1195 n. 60, n. 61. The court stated because " 'sudden' ... [is] capable of two reasonable interpretations, ('abrupt' and 'unexpected') ... the term is ambiguous under Delaware law," and must be construed in favor of the County of New Castle. Id. at 1198-99. The court reasoned:
 
 
 16
 Simply put, sudden means unexpected, and accidental means unintended.... Insurance policies routinely use words that, while not strictly redundant, are somewhat synonymous.... We think that the words "sudden" and "accidental," when read together, serve the same purpose as "discharge, dispersal, release or escape": they each connote the same general concept--namely fortuity--with a small variation. Neither do we think that annexing the word "sudden" to the word "accidental" with the conjunctive "and" necessarily injects a temporal element, such as brevity or abruptness, into the exception to the pollution exclusion clause.
 
 
 17
 Id. at 1194-95.
 
 
 18
 We disagree. We think the "annexation" of "sudden" to "accidental" is precisely the issue: reading "sudden" without a temporal component renders "accidental" redundant. While both conditions might include "unexpected" or "unintended," "sudden" cannot mean "gradual," "routine" or "continuous." Since Utah law dictates each contract provision be given effect, Marriot, 467 P.2d at 983, the conjunctive association of "sudden" with "accidental" is exactly the point on which our interpretation turns. Dictionaries may indicate each word has several overlapping meanings. We cannot use only the redundant definitions, however. Giving effect to every provision obliges us to construe "sudden" and "accidental" as separate, conditional requirements for coverage. This interpretive rule thus removes any ambiguity created by common usage.
 
 
 19
 It is worth noting the New Castle County court did not claim either the split of judicial authority on this issue or the existence of numerous dictionary definitions required a finding of ambiguity.[6] The court stated "[b]y their very nature, dictionaries define words in the abstract, whereas here, we must ascertain whether the word 'sudden' is ambiguous in the context of a specific insurance policy." 933 F.2d at 1194. The court also noted conflicting precedent, while relevant, did not "automatically mandate a finding of ambiguity." Id. at 1196.
 
 
 20
 We are in accord with numerous other federal court decisions which have found "sudden and accidental" precludes coverage of damage from continuous or routine business practices. In United States Fidelity and Guar. Co. v. Star Fire Coals, Inc., 856 F.2d 31 (6th Cir.1988), the Sixth Circuit held where Star Fire had discharged excessive amounts of coal dust in the course of its routine operations, it was not possible "to define 'sudden' without reference to a temporal element that joins together conceptually the immediate and the unexpected." Id. at 34. In Ogden Corp. v. Travelers Indem. Co., 924 F.2d 39 (2d Cir.1991), the Second Circuit found a "sudden" release or discharge of hazardous heavy metals had to " 'occur[ ] over a short period of time' " under New York law. Id. at 42 (citing Technicon Elecs. Corp. v. American Home Assurance Co., 141 A.D.2d 124, 137, 533 N.Y.S.2d 91, 99 (2d Dep't 1988), aff'd, 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989)). Similarly, the First Circuit recently stated "[w]e agree ... '[i]f the word 'sudden' is to have any meaning or value in the exception to the pollution exclusion clause, only an abrupt discharge or release of pollutants falls within the exception.' " A. Johnson & Co. v. Aetna Casualty and Sur. Co., 933 F.2d 66, 73 (1st Cir.1991).
 
 
 21
 Since its decision in this case, the Utah district court again has construed Utah law to require "sudden" be given its common temporal meaning. Anaconda Minerals Co. v. Stoller Chem. Co., 773 F.Supp. 1498 (D.Utah 1991). In Anaconda Minerals, a manufacturing operation continuously produced open waste piles of flue dust and mineral products containing hazardous materials. Holding routine discharges of pollutants or contaminants over a lengthy period are not sudden, the court stated:
 
 
 22
 [t]o strip "sudden" of its temporal element and define it as meaning "unexpected" as insureds suggests, would render "accidental" mere surplusage in the sudden and accidental exception. This would be contrary to Utah contract law, which requires the court to assume all language in a contract has a purpose and must be given effect. See Marriot v. Pacific Nat'l Assurance Co., 24 Utah 2d 182, 467 P.2d 981, 983 (1970).
 
 
 23
 Anaconda Minerals, 773 F.Supp. at 1505.
 
 
 24
 While the Utah Supreme Court has not yet addressed the pollution exclusion, we believe the Utah trial and appellate courts have indicated the Utah Supreme Court would accord "sudden" its temporal meaning in the context of these contracts. In Gridley Assocs., Ltd. v. Transamerica Ins. Co., 828 P.2d 524 (Utah App.1992), the Utah Court of Appeals held the pollution exclusion applied to a gasoline spill which occurred because of a "clean break" in the gasoline line. Gridley, 828 P.2d at 527. Noting it was a case of first impression in Utah, id. 828 P.2d at 526, the court found "sudden" was unambiguous in the language of the pollution clause. "While the word connotes a sense of unexpectedness, 'sudden' within the 'sudden and accidental' clause cannot be defined without reference to a temporal element, specifically immediacy, abruptness, and quickness." Id. 828 P.2d at 527.[7] We thus are persuaded the temporal element of "sudden" when joined with "accidental" is unambiguous.
 
 B. The Damage/Discharge Distinction
 
 25
 El Paso also argues the policy defines its coverage on the basis of "occurrences," which are "neither expected nor intended," and includes continuous or repeated events like the discharges at issue here. That contention, however, does not speak to the language of the pollution exclusion, which says insurance shall not be provided for any "property damage arising out of the discharge, dispersal, release or escape of ... waste materials ... contaminants or pollutants into or upon the land," except if "such discharge ... is sudden and accidental." (emphasis added). It is clear to us the "occurrence" and pollution exclusion provisions speak to different eventualities. While an accidental "occurrence" may be gradual, the discharge of pollution has more precise requirements for coverage.
 
 
 26
 We explained the relationship of these provisions in Broderick Inv. Co. v. Hartford Accident & Indem. Co., 954 F.2d 601 (10th Cir.1992):
 
 
 27
 Assuming the insured's loss resulted from an occurrence, the insurer may avoid paying out on the policy if the event falls within the policy's pollution exclusion. This provision excludes coverage for damages "arising out of the discharge, dispersal, release or escape of ... pollutants into or upon [the] land." Coverage is restored, however, if "such discharge, dispersal, release or escape is sudden and accidental."
 
 
 28
 Broderick, 954 F.2d at 605. If the loss "arises out of" the discharge of pollution, the pollution exclusion, not the more generous coverage of the "occurrence" provision, governs.[8] As the district court noted, "[t]he occurrence definition and the pollution exclusion serve distinct purposes. No ambiguity is created merely because an exclusion eliminates coverage from an insuring agreement." Hartford v. USF & G, 765 F.Supp. at 681. See also Anaconda Minerals, 773 F.Supp. at 1503 n. 7 (" 'Occurrences' are covered unless the occurrences arise out of polluting events; those are not covered unless the polluting events are sudden and accidental....") (citing American Motorists Ins. Co. v. General Host Corp., 667 F.Supp. 1423, 1429 (D.Kan.1987), aff'd, 946 F.2d 1482 (10th Cir.1991), vacated in part and remanded, 946 F.2d 1489 (10th Cir.1991)).
 
 
 29
 Utah law holds " 'arising out of' is a phrase of much broader significance than 'caused by.' " National Farmers Union Property & Casualty Co. v. Western Casualty & Sur. Co., 577 P.2d 961, 963 (Utah 1978). In an insurance policy the phrase means "originating from, growing out of, or flowing from, and require[s] only that there be some causal relationship between the injury and the risk for which coverage is provided." Id. The causal connection in this case between El Paso's continuous discharges of waste and PCB contamination is undisputed. Though unwitting, PCB contamination was inherent in every discharge.
 
 
 30
 We have found almost universal agreement among federal courts applying the pollution exclusion that it is the discharge which must be sudden and accidental to qualify for coverage, not the pollution damage. In Broderick, we reversed the district court for Colorado which held "discharge, dispersal, release or escape" applied only to the seepage of wood treatment chemicals from the holding pond into the groundwater, not to the initial deposit of waste chemicals into the ponds. Broderick, 954 F.2d at 607. We reasoned "because the pollution exclusion clause utilizes the word 'or' to connect these four words, the exclusion is triggered if even one of the four words unambiguously describes BIC's placement of waste into the ponds." Id. We concluded "discharge into or upon the land" described Broderick's placement of waste into the disposal ponds. In our opinion, El Paso's arguments concerning the unintended damage from its discharges parallel those we dismissed in Broderick. Whether El Paso intended to cause damage after the initial discharge is irrelevant. Id. at 608.
 
 
 31
 We note Broderick construed "sudden and accidental" in favor of the insured to mean unexpected and unintended, following the decision of the Colorado Supreme Court in Hecla Mining Co. v. New Hampshire Ins. Co., 811 P.2d 1083, 1092 (Colo.1991). Broderick, 954 F.2d at 608. Even with Colorado's generous definition of "sudden and accidental," however, the Broderick court denied coverage because the initial wood treatment discharges into containment ponds were not unexpected and unintended. Id. New Castle County, a case on which El Paso relies for its definition of "sudden and accidental," withheld coverage for the same reason: "whatever the meaning of 'sudden,' the plain language of the 'sudden and accidental' exception to the pollution exclusion focuses on the nature of the discharge, not on the resulting environmental damage." 933 F.2d at 1202.
 
 
 32
 As in the construction of "sudden and accidental," we believe the Utah Supreme Court would support our conclusion the pollution exclusion restores coverage only for polluting discharges which are sudden and accidental. The federal district court for Utah has construed Utah law twice to exclude damage from the focus of the pollution exclusion. In Anaconda Minerals the court stated "under the pollution exclusion clause, the court need only inquire whether the insured intended the discharge of the pollutants.... The court need not consider whether the insured intended or expected the pollution damage caused by the discharge." Anaconda Minerals, 773 F.Supp. at 1506.
 
 
 33
 Treating the issue on first impression, the Utah Court of Appeals held in Gridley "the explicit language of Gridley's policy only requires that the discharge itself be 'sudden' in order to be covered under the policy." 828 P.2d at 527. In El Paso's case, the disposal of liquid wastes into the pits was neither abrupt nor unexpected but a continuous and routine operating practice over many years. The PCB contamination which was concomitant with this discharge was unintended and unexpected but not sudden. Even were we to apply the pollution exclusion to the damage, in contradiction to our interpretation of Utah and general contract law, the PCB damage was not abrupt or quick, only unintentional.
 
 IV. Summary
 
 34
 We agree with Hartford. Because we think "sudden" includes a temporal element, and is joined conjunctively with "accidental," El Paso's intentions or ignorance of the PCBs are not sufficient to satisfy the pollution exclusion. The more relevant fact is El Paso's regular and continuous business practice of discharging waste products directly into the environment. While the meaning of "sudden and accidental" may include the unexpected, it plainly cannot comprehend unexpected, unintended and gradual. Because we think the contract is unambiguous, we do not reach El Paso's arguments concerning the drafting history of the pollution exclusion.
 
 
 35
 We hold "sudden and accidental" in the pollution exclusion means abrupt or quick and unexpected or unintended in the context of Utah law. We conclude the pollution exclusion restores coverage to those polluting occurrences in which the discharge of the contaminant is both sudden and accidental. We thus AFFIRM the holding of the district court.
 
 
 
 *
 The Honorable Elmo B. Hunter, Senior Judge for the United States District Court for the Western District of Missouri, sitting by designation
 
 
 [1]
 United States Fidelity and Guaranty Company and Commercial Union Insurance Company, the two other named defendants in Hartford's suit against El Paso, insured El Paso prior to 1976. Hartford v. USF & G, 765 F.Supp. at 679 n. 4. El Paso is the only appellant
 
 
 [2]
 Hartford also moved for summary judgment on the basis that the policy's "alienated premises" clause precluded coverage. The district court did not reach this issue, and it is not before us on appeal
 
 
 [3]
 See Adams-Arapahoe School Dist., 891 F.2d at 774 ("With respect to issues which the Colorado Supreme Court has not addressed, we may consider all available resources, including Colorado appellate court decisions, other state and federal decisions, and the general trend of authority, to determine how the Colorado Supreme Court would construe the law in this case.") (citations omitted)
 
 
 [4]
 American Motorists Ins. Co. v. General Host Corp., 946 F.2d 1482 (10th Cir.1991), was vacated and remanded at 946 F.2d 1489. The panel on rehearing vacated that portion of the first opinion that held American Motorists had no duty to defend because the pollution was found not to be accidental. The court concluded the underlying action was "arguably and potentially" within the "sudden and accidental" exception of the insurance contract and remanded for further proceedings on the duty to defend issue. American Motorists, 946 F.2d at 1492. The first panel's description of the case law defining "accidental" in pollution exclusion clauses is still instructive
 
 
 [5]
 See, e.g., EAD Metallurgical, Inc. v. Aetna Casualty & Sur. Co., 905 F.2d at 11 (appellants alleged to have " 'continuously and intentionally polluted.' ")
 
 
 [6]
 "[W]e agree ... that the existence of more than one dictionary definition is not the sine qua non of ambiguity. If it were, few words would be unambiguous." 933 F.2d at 1193 (citing Fireman's Fund Ins. Cos. v. Ex-Cell-O Corp., 702 F.Supp. 1317, 1324 (E.D.Mich.1988)) ("[I]f merely applying a definition in the dictionary suffices to create ambiguity, no term would be unambiguous. The interpretation of contractual language is not mechanical.")
 
 
 [7]
 In an unpublished opinion, the trial court for the third district of Utah came to a similar conclusion. See Anaconda Minerals, 773 F.Supp. at 1505 n. 9 (citing Sharon Steel v. Aetna Casualty & Sur. Co., Nos. C-87-2306 & C-87-2311 at 28 (3d Dist.Utah, July 20, 1988)) ("without referring to dictionaries, case law or parol evidence, reasonably prudent person would interpret 'sudden' as including 'temporal condition of being instantaneous and abrupt' ")
 
 
 [8]
 See Star Fire Coals, 856 F.2d at 34:
 We have no difficulty reconciling the two provisions. We believe the "occurrence" definition results in a policy that provides coverage for continuous or repeated exposure to conditions causing damages in all cases except those involving pollution, where coverage is limited to those situations where the discharge was "sudden and accidental."
 See also New Castle County, 933 F.2d at 1200:
 [The insured] misreads and confuses the policy provisions. The fact that the damage was not intended means that there was an "occurrence" within the policy definition. That fact has nothing to do with whether the discharge was "sudden and accidental" for the purpose of applying the exception to the exclusion.
 Citing Transamerica Ins. Co. v. Sunnes, 77 Or.App. 136, 140, 711 P.2d 212, 214 (1985), review denied, 301 Or. 76, 717 P.2d 631 (1986) (emphasis in original).