ANACONDA MINERALS COMPANY,
Plaintiff,

and

Arco, Inc., Bethlehem Steel Corporation, Chaparral Steel Company, Marathon Steel Company, Nucor Corporation, Tamco, Inc., Federated Metals Corporation, Plaintiffs–Appellants,

v.

STOLLER CHEMICAL COMPANY, Jerry H. Stoller, Micronutrients International, Inc., Matt Recycling Company, Defendants.

STOLLER CHEMICAL COMPANY,
Jerry H. Stoller, Third–Party–
Plaintiffs,

v.

FIREMAN'S FUND INSURANCE COMPANY, The Travelers Indemnity Company of America, American Universal Insurance Company, Great Northern Insurance Company, United States Fire Insurance Company, International Insurance Company, Highlands Insurance Company, Third–Party–Defendants–Appellees.

No. 91–4187.

United States Court of Appeals,
Tenth Circuit.

April 13, 1993.

Glen E. Davies and R.L. Knuth of Watkiss & Saperstein, and H. Michael Keller and Jeffrey E. Nelson of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, UT, for appellants/petitioners.

Rex E. Madsen and Jerry D. Fenn of Snow, Christensen & Martineau, Salt Lake City, UT, Karen L. Bizzini and Rhonda H. Mehlman of Shapiro, Posell & Close, Los Angeles, CA, for appellee/petitioner Highlands Ins. Co.

Mark J. Williams of Hanson, Epperson & Smith, Salt Lake City, UT, Daniel A. Bertoldus and Lawrence A. Levy of Rivkin, Radler & Kremer, Uniondale, NY, for appellee/respondent Fireman's Fund Ins. Co.

Michael M. Later and John M. Burke of Kimball, Parr, Waddoups, Brown & Gee, Salt Lake City, UT, for appellee/respondent Travelers Indem. Co.

John M. Chipman and Linda L.W. Roth of Hanson, Nelson, Chipman & Quigley, Salt Lake City, UT, for appellee/respondent American Universal Ins. Co.

Robert L. Stevens of Richards, Brandt, Miller & Nelson, Salt Lake City, UT, for appellees/respondents U.S. Fire Ins. Co. and Intern. Ins. Co.

Thomas W. Brunner, Daniel E. Troy, and Stephen P. Keim of Wiley, Rein & Fielding for amicus curiae Insurance Environmental Litigation Ass'n.

Before EBEL, HOLLOWAY, Circuit Judges and COOK, Senior District Judge.*

H. DALE COOK, Senior District Judge, Sitting by Designation.

This action arose out of Arco, Inc.'s ("Arco")[1] claim against Appellees–Respondents, Stoller Chemical Company, Inc. and Jerry H. Stoller (collectively "Stoller") for indemnification for costs and expenses incurred and to be incurred by Arco in complying with an environmental clean-up order issued by the Environmental Protection Agency.

In 1974 Stoller acquired the stock of the Micronutrients International, Inc. ("MII") plant and became responsible for operating it. The MII plant manufactured micronutrient fertilizer additives. It produced zinc sulfate by mixing flue dust and other similar materials to water and sulfuric acid. Stoller was aware that the flue dust contained lead. The flue dust was stored on the ground and in storage hoppers. Stoller was unaware that there was a problem with this means of storage.

Comprehensive general liability insurance policies were issued to Stoller and/or MII by several insurance carriers (collectively "Insurers") insuring various risks arising out of operations at the MII plant. Arco generated flue dust and arranged for its sale and delivery to the MII plant site.

Stoller sold the plant in 1981 to Matt Recycling Co. ("Matt") and the plant closed in 1982. Sometime after the plant closed the EPA determined that materials stored at the plant were hazardous. As a result, in January of 1986 Arco and Stoller entered into an administrative consent order with the EPA. Pursuant to the consent order Arco and Stoller were directed to perform certain clean-up work at the MII site. This work included removal and proper disposal of flue dust stockpiles which remained at the site.

Arco initiated this action against Stoller asserting indemnification for the $3.2 million incurred by Arco in complying with the consent order. Stoller filed a third-party complaint against the Insurers seeking their defense of and indemnification from Arco's claims.

Arco and Stoller entered into a settlement agreement. Pursuant to the settlement, Stoller stipulated to entry of judgment in favor of Arco in the amount of $2,000,000. In satisfaction of the judgment Stoller agreed to pay Arco the sum of $150,000. In addition, Stoller assigned its claims against Insurers to Arco.

---

* Honorable H. Dale Cook, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation.

1. Plaintiffs–Appellants are a group of steel manufacturers. For purposes of clarity in this opinion they will be collectively referred to as Arco.

Insurers filed a joint motion for summary judgment alleging that Arco's claims against Stoller were not covered by the policies in issue. The policies covered damage caused by an "occurrence." An occurrence is defined as damage which is "neither expected nor intended from the standpoint of the insured." The policies contained pollution exclusion clauses which excluded coverage for:

> bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land ...

The exclusion does not apply if "such discharge, dispersal, release or escape is sudden and accidental."[2]

The district court granted summary judgment in favor of Insurers on the basis that Arco's claim was barred by the pollution exclusion contained in each of the policies. Arco appeals the court's grant of summary judgment to Insurers claiming that the court did not correctly apply Utah law and misconstrued the terms "sudden and accidental" in the policies' pollution exclusion clauses.[3] In addition, Arco has submitted a motion for an order certifying issues of state law to the Utah Supreme Court. For the reasons set forth below we affirm the judgment of the district court and we decline to certify the issues to the Utah Supreme Court.

■ Subsequent to the filing of this appeal we decided *Hartford Accident & Indem. Co. v. United States Fidelity and Guar. Co.*, 962 F.2d 1484 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 411, 121 L.Ed.2d 335 (1992). In *Hartford* we construed the same pollution exclusion applying Utah law. The Court will certify only questions which are both unsettled and dispositive. *Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140, 1149 (10th Cir.1982), *cert. denied,* 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982).

It is clear from our analysis in *Hartford* that the controlling law is not unsettled. We stated that because the issue was one of first impression, it was our responsibility to give the pollution exclusion clause the interpretation that we believed would be given by the Utah court. *Hartford,* 962 F.2d at 1487. Hartford sets forth a review of this issue from decisions of the Utah appellate courts and federal courts in this and other circuits. We noted that where a state Supreme Court has not addressed an issue "we may consider all available resources, including [that state's] appellate court decisions, other state and federal decisions, and the general trend of authority, to determine how the [state] Supreme Court would construe the law ..." *Id.* at 1487–88 n. 3, quoting *Adams–Arapahoe*

---

**2.** All but one of the policies contained this language. A policy issued by the Travelers Indemnity Company of Rhode Island ("Travelers") excludes coverage for:

> bodily injury or property damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant (i) if such emission, discharge, seepage, release or escape is either expected or intended from the standpoint of any insured or any person or organization for whose acts or omissions any insured is liable.

This exclusion language is different from the language in the other policies, however, its effect is the same. This opinion will explain that the definition of the term "accidental" is unexpected or unintended. We affirm the district court's conclusion that the difference in the language does not call for a difference in analysis. *See Anaconda Minerals Co. v. Stoller Chem. Co., Inc.,* 773 F.Supp. 1498, 1506 (D.Utah 1991).

**3.** Our review of a grant of summary judgment is *de novo.* Therefore, in evaluating the summary judgment motion, we apply the same legal standard employed by the district court which is set forth in Rule 56(c) of the Federal Rules of Civil Procedure. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). If "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law" then summary judgment is appropriate. Fed.R.Civ.P. 56(c). We view the evidence "in the light most favorable to the party opposing" a motion for summary judgment. *Applied Genetics* at 1241.

"The construction of an insurance policy is a matter of law." *Grimes v. Swaim,* 971 F.2d 622, 623 (10th Cir.1992) quoting *Adams–Arapahoe Joint School Dist. No. 28–J v. Continental Ins. Co.,* 891 F.2d 772, 774 (10th Cir.1989). Therefore, our review of the meaning of the pollution exclusion is also *de novo.*

*Joint School Dist. No. 28–J v. Continental Ins. Co.,* 891 F.2d 772, 774 (10th Cir.1989). We remain convinced that the Utah Supreme Court would construe the pollution exclusion as we did in *Hartford.* We, therefore, decline to certify the issue.

Appellant did not have the benefit of our decision in *Hartford* at the time this appeal was filed. Arco concedes that the facts in *Hartford* are not distinguishable from the instant case and asks that we overrule *Hartford.* We cannot do so.[4]

*Hartford* involved an insurance dispute between El Paso Natural Gas Company and Hartford Accident & Indemnity Corporation. El Paso operated a gas transmission system which used an air compressor lubricating oil. The oil was later found to contain a polychlorinated biphenyl ("PCB"). Unaware that the oil contained PCBs, El Paso intentionally discharged the oil into pits and onto the ground. The contaminated wastes were carried into the surrounding environment. El Paso did not expect or intend this result. *Hartford,* 962 F.2d at 1486–1487.

Hartford insured El Paso under a general liability policy. The policy contained a pollution exclusion clause essentially identical to the clauses at issue in the instant appeal. El Paso sold its transmission system to Northwest Pipeline Corporation and agreed to indemnify Northwest for any liability caused by El Paso prior to the sale. Northwest then discovered the PCB pollution and reported it to the EPA.

Pursuant to a consent order Northwest cleaned the contaminated sites. Northwest sued El Paso and settled for 6.6 million dollars. El Paso demanded indemnification from Hartford under the general liability policy. Hartford brought a declaratory judgment action against El Paso claiming that the policy's pollution exclusion prevented coverage of pollution.

The district court in *Hartford* held that the pollution exclusion clause prevented coverage for the contamination. *Hartford Accident & Indem. Corp. v. United States Fidelity & Guaranty,* 765 F.Supp. 677, 681 (D.Utah 1991). The trial court in the subject action concluded, as did the trial court in *Hartford,* that because the pollution occurred gradually and the discharge was intended coverage under the policies was barred and Insurers were entitled to judgement as a matter of law. *See, Anaconda Minerals Co. v. Stoller Chem. Co., Inc.,* 773 F.Supp. 1498 (D.Utah 1991). In both cases summary judgment was awarded to the insurance companies. *Anaconda* at 1508; *Hartford,* 765 F.Supp. at 681.

■ As in the *Hartford* appeal we are now asked to review the meaning of the words "sudden and accidental" in relation to a discharge of pollutants. Arco argues that the term "sudden and accidental" is ambiguous and that the word "sudden" should be construed against the insurer to mean unexpected or unintended instead of abrupt or instantaneous. It asserts that there was no expected or intended damage. It also urges that the term "sudden and accidental" relates to resulting unintended damage caused by discharge of pollutants, and not to the continuous discharge itself. Further, it maintains that the Court should examine and consider the relevant drafting history of the pollution exclusion. These same arguments were raised and rejected in *Hartford.* Nothing asserted in this appeal persuades us that *Hartford* should be overturned.

First, the term "sudden and accidental" is unambiguous. The word "accidental" means unexpected or unintended. *Hartford,* 962 F.2d at 1488. The term "sudden" must be given its conventional temporal definition.[5] *Id.* at 1489. It, therefore,

---

4. No basis is shown for treating the instant case as being outside our general rule that a three-judge panel may not overrule a prior decision of this Court. *See United States v. Taylor,* 828 F.2d 630, 633 (10th Cir.1987) ("a panel is not authorized to overrule a prior decision of a court of appeals"). We perceive no reason why this case is an exception to that long-standing rule and are not moved to request that the court consider such overruling by an en banc proceeding here.

5. It should be noted that we favorably cited the *Anaconda* opinion for the conclusion that Utah law requires that the word "sudden" in the policies be defined as abrupt and immediate. *Hartford,* 962 F.2d at 1489–90.

 

means abrupt or instantaneous. *Id.* at 1490.

 Next, Arco believes as did El Paso in *Hartford* that because the policies cover "occurrences" which are not expected or intended, continuous and repeated discharges are covered. We found in *Hartford* as we do here that "[i]f the loss 'arises out of' the discharge of pollution, the pollution exclusion, not the more generous coverage of the 'occurrence' provision, governs."[6] *Id.* at 1490 (footnote omitted). In this case as in *Hartford*, there is the necessary causal connection between the continuous discharge of a hazardous substance and the pollution damage.

 In addition, we have joined with the majority of federal courts in holding "that it is the discharge which must be sudden and accidental to qualify for coverage, not the pollution damage." *Id.* at 1491. In fact, in *Hartford*, we cited the district court decision in this very case on this issue. *Id.* at 1491. Pursuant to Utah law the only necessary inquiry under the pollution exclusion is " 'whether the insured intended the discharge of the pollutants.' " *Id.* quoting *Anaconda*, 773 F.Supp. at 1506 (emphasis omitted). It is not necessary to " 'consider whether the insured intended or expected the pollution damage caused by the discharge.' " *Id.* (emphasis omitted). Therefore, even if the actual contamination damage in the instant case was not expected or intended, because the discharge themselves were gradual and intended the pollution exclusion bars coverage.

Finally, we decline, as we did in *Hartford*, to examine or consider the drafting history of the pollution exclusion. Under Utah law extrinsic evidence will not be considered where a contract is unambiguous. *Williams v. First Colony Life Ins. Co.*, 593 P.2d 534, 536 (Utah 1979).

CONCLUSION

*Hartford* is directly on point with the instant case and is dispositive of the issues presented here. We reject Arco's invitation to overrule *Hartford* and AFFIRM the district court's decision.

---

6. We explained that under Utah law the phrase "arising out of" is of considerably broader significance than "caused by". *Hartford*, 962 F.2d at 1491, quoting *National Farmers Union Property & Casualty Co. v. Western Casualty & Sur. Co.*, 577 P.2d 961, 963 (Utah 1978). "In an insurance policy the phrase means 'originating from, growing out of, or flowing from, and require[s] only that there be some causal relationship between the injury and the risk for which coverage is provided.' " *Id.*