**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

THOMAS WHEELER,

     Plaintiff - Appellant,

v.

ALLSTATE INSURANCE COMPANY;
ALLSTATE INDEMNITY COMPANY,

     Defendants - Appellees.

No. 15-4159
(D.C. No. 2:12-CV-00193-BCW)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

## I. INTRODUCTION

This appeal arises from a dispute between Plaintiff–Appellant Thomas Wheeler

and Defendants–Appellees Allstate Insurance Company and Allstate Indemnity Company

(together, "Allstate") over the scope of coverage under a homeowners insurance policy.

After a water pipe burst and flooded Mr. Wheeler's cabin, he filed a claim with Allstate,

seeking coverage for some (but not all) of the resulting damage. When Allstate denied the

claim, Mr. Wheeler sued for breach of contract and breach of the implied covenant of

good faith and fair dealing.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

A magistrate judge issued an order granting Allstate's motion for summary judgment on both claims. Mr. Wheeler now appeals, arguing the magistrate judge erred by granting summary judgment in the face of a genuine dispute of material fact. We agree and therefore reverse.

## II. BACKGROUND

### A. *Factual History*

Mr. Wheeler owns a seasonal cabin in Duck Creek, Utah. He carried homeowners insurance on the cabin through Allstate. In April 2011, while on a walk near the cabin, an acquaintance of Mr. Wheeler stopped at the cabin for a drink of water. No one had visited the cabin during the preceding winter months. Once inside, the acquaintance discovered that "water was spraying out everywhere" from a pipe under a sink in the basement, and four or five inches of standing water covered the basement floor. The damage to the cabin was substantial. It later would be determined that the flooding began approximately two months earlier, as the result of a failed valve.

Soon after the problem was discovered, Mr. Wheeler had his assistant call Allstate to report it. The Allstate representative on the call informed the assistant that, based on the information provided, Allstate likely would not cover the loss. On April 22, 2011, Allstate sent an outside adjuster to examine the cabin. According to Mr. Wheeler's contractor, who met the adjuster there, the adjuster inspected the cabin for "ten minutes tops" and "took like two or three pictures and left" without inspecting the source of the water. The adjuster's log of the inspection notes there was "extensive mold damage throughout" the cabin, which constituted "the main loss." It also states the adjuster

2

informed Mr. Wheeler's contractor that "long-term water damage and loss was not covered," and indicates that the adjuster "[w]ill send out [a] denial letter and close the file."

Mr. Wheeler's homeowners insurance policy (the "Policy") contained several provisions concerning coverage for water damage. The language relevant to this case reads as follows:

> Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C
>
> A. We do not cover loss to the property described in Coverage A—Dwelling Protection or Coverage B—Other Structures Protection consisting of or caused by the following:
>     . . . .
>
> 3. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:
>     a) from a plumbing . . . system; or
>     b) from, within or around any plumbing fixtures, including, but not limited to . . . sinks or other fixtures designed for the use of water or steam.
>     . . . .
>
> 7. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
>     b) mechanical breakdown;
>     . . . .
>
>     d) rust or other corrosion;
>     . . . .
>
> If any of a) through h) cause the sudden and accidental escape of water or steam from a plumbing . . . system within your dwelling, we cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of your dwelling necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

3

For ease of understanding, we will refer to section A.3 as "Exclusion 3"; to section A.7 as "Exclusion 7"; and to the final paragraph of section A.7 as the "Exception to Exclusion 7" or the "Exception."

On April 26, 2011, Allstate sent Mr. Wheeler a letter denying his claim; the letter cited to Exclusion 3.

## B. *Procedural History*

After Allstate denied his claim, Mr. Wheeler filed a lawsuit in Utah state court, alleging that Allstate breached the insurance contract and breached the implied covenant of good faith and fair dealing. Allstate removed the case to federal court on the basis of diversity, 28 U.S.C. § 1332, and the parties later consented to the jurisdiction of the magistrate judge (the "trial court"), *id.* § 636(c)(1). After conducting some discovery, Allstate moved for summary judgment on both claims, and Mr. Wheeler moved for summary judgment on the breach of contract claim.

## 1. The Parties' Positions in the Trial Court

On the breach of contract claim, Allstate argued it properly denied coverage under Exclusion 3 of the Policy, which it claimed unambiguously excludes coverage of water damage such as that sustained in Mr. Wheeler's cabin. Mr. Wheeler's response to this argument was twofold. First, he argued that Exclusion 3 does not apply here at all. In particular, he maintained that the terms "seepage" and "leakage" are ambiguous and that it is unclear whether either term embraces the water forcefully spraying from the pipe under his basement sink. Mr. Wheeler also argued the definition of "seepage" is

4

ambiguous for the additional reason that it includes the term "weeks," which, he maintained, the parties agreed is ambiguous in the context of Exclusion 3. Thus, Mr. Wheeler took the position that Exclusion 3 is a generally ambiguous provision and therefore should be construed in favor of coverage under the default rule.[1]

Alternatively, however, Mr. Wheeler argued that even if Exclusion 3 is unambiguous, and the water release in his cabin generally could be considered "seepage or leakage," the exclusion does not apply to his specific claimed loss because that loss was sustained within the first few days of flooding. He noted that, whatever the term "weeks" might precisely mean, his and Allstate's experts had agreed that it must at a minimum mean 14 days. And because he claimed coverage only for damage which occurred within 13 days of the water release, the loss would not be excluded because it was not "caused by . . . seepage or leakage over a period of weeks." According to Mr. Wheeler, his expert had "demonstrated that the amount of flooding needed to cause the damage that [Mr. Wheeler was claiming] would have happened [in] the first three days of flooding," and "[t]he damages were not greater because the flood continued longer than 3 days."[2] By contrast, Mr. Wheeler stressed he was not seeking to recover for damages that

---

[1] Mr. Wheeler's argument that the Policy is ambiguous was also offered to support his claim that Allstate breached the implied covenant of good faith and fair dealing. The expert Mr. Wheeler retained to evaluate Allstate's handling of his claim opined that Allstate acted in bad faith by relying on ambiguous policy language to deny coverage, rather than fulfilling its alleged duty to search for coverage first.

[2] In his report, Mr. Wheeler's expert stated that "standing water must be removed in no more than 3 days [or else] irreparable damage [will be] effected due to water invading expansive or absorbing materials." He further concluded that, here, "the water

5

were caused over a longer period of time or that "would have been exacerbated by a delay in discovering the flood." Thus, he asserted that, "even were [Allstate's] understanding of the policy to be accepted, [Allstate's] understanding of the policy would not cut off liability."

Although he maintained that, ambiguous or not, Exclusion 3 does not apply to the damages he sought to recover, Mr. Wheeler conceded those damages still would fall within the reach of Exclusion 7 because the failure of the valve likely was attributable to one or more of the causes listed in paragraphs (a), (b), and (d) of that provision.[3] But he argued the Exception to Exclusion 7 nonetheless provided coverage because the loss he was claiming was "direct physical damage caused by" the "sudden and accidental escape of water . . . from a plumbing . . . system." Construing the provisions together, Mr. Wheeler argued the Policy's language and the caselaw addressed by the parties "support[] the notion that certain damages could be caused by seepage and excluded while other damages, arising from the same flood, could be caused by [the sudden and accidental escape of water] and be covered."

In response, Allstate acknowledged that its expert had agreed in her deposition that there would be coverage for damage inflicted during the first 13 days. Specifically, Allstate's expert agreed that it is "accurate to say that any damage that would have

---

damage to walls, cabinets, and other water absorbing materials was beyond repair within less than [a] week."

[3] These causes are "a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect"; "b) mechanical breakdown"; and "d) rust or other corrosion."

occurred during the first 13 days should be covered," but only "[i]f there was a way to determine [what damage occurred during the first 13 days] but there is not." Allstate argued, however, that the "reasoning for this conclusion" was that "damage which occurred during the first 13 days . . . would not have become seepage"—and thus "would not have implicated" Exclusion 3—if the water release had been stopped within that timeframe. Allstate also noted that the expert had concluded there should be no coverage here; that the various cases the parties analyzed in their discussions of Exclusion 3 and the Exception to Exclusion 7 say nothing about discerning short-term versus long-term damage; and that requiring an insurer to identify and separate short-term damage "would be expensive and likely fruitless." Allstate further contended that the Exception does not apply in this case because "a continuous water loss that occurs over a 70-day period" is not "sudden and accidental."

On the claim for breach of the implied covenant of good faith and fair dealing, Allstate argued it did not breach the covenant because it diligently investigated, fairly evaluated, and promptly and reasonably rejected Mr. Wheeler's insurance claim. Alternatively, Allstate claimed it cannot have breached the covenant as a matter of law because Mr. Wheeler's claim was "fairly debatable." Mr. Wheeler argued in response that fact disputes precluded summary judgment on the implied covenant claim.

## 2. The Trial Court's Decision

The trial court considered the parties' motions together and, after conducting a hearing, issued an order granting Allstate's motion and denying Mr. Wheeler's. At the outset of its written analysis, the court acknowledged that Mr. Wheeler was seeking only

damages caused during the first week of flooding and was not requesting long-term damages, such as mold.

The trial court first concluded Exclusion 3 is unambiguous, rejecting Mr. Wheeler's contrary argument and accepting as "in line with the plain meaning of the [Policy]" Allstate's counsel's statement that "the only time [water damage is] not covered, the only time [Exclusion 3] comes in is when we're dealing with a long term loss." (Alteration omitted.) The trial court further determined that *American Concept Insurance Co. v. Jones*, 935 F. Supp. 1220, 1225–27 (D. Utah 1996), which found a similarly worded insurance-policy provision unambiguous, supported the conclusion that Exclusion 3 is not ambiguous.

Next, the court turned to Mr. Wheeler's arguments that "the Court should construe what happened at his cabin" as being covered under the Exception to Exclusion 7 and that its primary task was to determine whether the release of water here was "sudden," within the meaning of the phrase "sudden and accidental." The court concluded "there is no need as [Mr. Wheeler] suggests, to interpret whether the loss was 'sudden'" because, for reasons the court would "explain[] in more detail below, the Court finds [Exclusion] 3 excludes coverage of [Mr. Wheeler]'s claim and therefore [Exclusion] 7 does not apply."

In reaching its conclusion that "the [E]xception is triggered only if no other exclusion applies," the court relied on *Marsh v. American Family Mutual Insurance Co.*,

218 P.3d 573 (Or. Ct. App. 2009).[4] There, the Oregon Court of Appeals held that water damage caused by continuous leakage over a period of at least several months, and more likely years, was specifically excluded under a provision similar to Exclusion 3, even though the policy provided coverage for other water damage under a provision similar to the Exception to Exclusion 7. *See id.* at 574–75, 577–78. According to the trial court here, the reasoning in *Marsh* aligned "with Allstate's arguments . . . that if [Mr. Wheeler] had discovered his loss in a more timely fashion, perhaps there would have been coverage but because [Mr. Wheeler]'s loss was over an extended period of time, the exclusionary language precludes [Mr. Wheeler]'s recovery. Therefore, like *Marsh*, the exceptions do not apply."

Finally, the trial court asserted that the fact Mr. Wheeler was "only claiming loss for the first few days of water damage" had "no effect on the Court's decision based upon the facts of this case." The court then elaborated:

> Because the damage to [Mr. Wheeler]'s cabin was so extensive and was not found for at least 60–70 days, it is difficult if not impossible for the Court to determine exactly what amount of damage would have occurred in the first few hours and days. In addition, the Court believes the interpretation [Mr. Wheeler] wishes the Court to make is against the authority cited above both in this District and others that found coverage to be specifically excluded for long-term water damage. The policy language works to preclude coverage for exactly the type of damage that occurred in this case—water damage that was undiscovered or unattended for an extended period of time regardless of the source.

---

[4] It also relied on *Schwartzenfeld v. Nationwide Mutual Fire Insurance Co.*, No. 296752, 2011 WL 1565466 (Mich. Ct. App. Apr. 26, 2011) (per curiam) (unpublished), for the same proposition.

Thus, the trial court determined "the [Policy] is not ambiguous[,] . . . Allstate did not breach the [Policy] by failing to cover [Mr. Wheeler]'s loss to his cabin," and "[Mr. Wheeler] is not entitled to recovery for the loss sustained to the cabin." Nowhere in its analysis did the court address Mr. Wheeler's contentions that the parties' experts agreed damage fully inflicted during the first 13 days is not excluded under Exclusion 3 and that, even if the Policy is unambiguous, he is entitled to recover his short-term damages because they were caused by leakage over a period shorter than "weeks."

Turning briefly to the implied covenant claim, the trial court again granted summary judgment for Allstate, based largely on its conclusion that the damages Mr. Wheeler sustained were excluded under Exclusion 3. The court noted that "[t]he damage to [Mr. Wheeler]'s cabin was so extensive and by all accounts occurred over an extended period of time." For that reason, the court concluded it is "reasonable that Allstate's representatives . . . acted diligently, reasonably, fairly and promptly in denying [Mr. Wheeler]'s claim."

\*     \*     \*

Mr. Wheeler now appeals, and we have jurisdiction to hear it under 28 U.S.C § 636(c)(3). "We review a grant of summary judgment de novo." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

10

## III. DISCUSSION

Mr. Wheeler argues there is a genuine dispute of material fact as to whether the short-term damage (i.e., damage fully inflicted in 13 days or less) to his cabin can be separated from the long-term damage (i.e., damage not fully inflicted until 14 days or more) and that the trial court impermissibly resolved this factual dispute itself in granting summary judgment for Allstate. From a coverage standpoint, Mr. Wheeler asserts the severability of damages is material because, by its terms, Exclusion 3 applies only to long-term damage, such that short-term damage is not excluded under that provision *unless* it cannot reliably be established as distinct from long-term damage. And because here he seeks to recover only short-term damages which his expert says are separable, Mr. Wheeler's position is that, contrary to the trial court's conclusion, his damages are not excluded. Rather, Mr. Wheeler contends, as he did below, that his short-term damages are covered under the Exception to Exclusion 7. Mr. Wheeler also argues the trial court erred in rejecting his implied covenant claim because its ruling on that claim was premised on its erroneous conclusion that Exclusion 3 precludes Mr. Wheeler's recovery.

Allstate disagrees and argues the trial court properly granted summary judgment on both claims. It concedes that the question of whether short-term damage can be distinguished from long-term damage is a disputed issue of fact but argues that it is not material and that the trial court's finding on that issue is therefore harmless. Thus, the central issue on appeal is whether the severability of short- and long-term damages is material and, accordingly, should have precluded summary judgment. A fact is material if

11

it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015).

As we explain in detail below, we agree with Mr. Wheeler that the question of whether he can reliably prove his alleged short-term damages, as distinct from any long-term damages, is an issue of fact that might affect the outcome of this case. It is, therefore, material. We further agree that this factual dispute is material not just to Mr. Wheeler's breach of contract claim, but also to his breach of the implied covenant of good faith claim. It follows, then, that the trial court erred in disposing of these claims on summary judgment. In explaining our reasoning, we address each of Mr. Wheeler's claims separately, beginning with breach of contract.

## A. *Breach of Contract*

To decide whether the factual dispute over the divisibility of water damages is material to Mr. Wheeler's breach of contract claim, we must determine whether the resolution of that dispute could affect the scope of coverage under the Policy. If the alleged short-term damage is not covered under the Policy, then Allstate could not have breached the Policy by denying coverage, regardless of whether the short-term damage can be established independently. This issue therefore turns on the proper construction of the parties' insurance contract, which is a question of law. *MarketWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190 (10th Cir. 2009). In this diversity case, we apply the substantive law of Utah. *See Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994).

12

### 1. Relevant Utah Law

"Under Utah law, insurance policies are construed using general contract principles." *Utah Power & Light Co. v. Fed. Ins. Co.*, 983 F.2d 1549, 1553 (10th Cir. 1993). In interpreting insurance contracts, Utah courts "consider[] their meaning to a person of ordinary intelligence and understanding, . . . in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, including the purpose of the policy." *Lopez v. United Auto. Ins. Co.*, 274 P.3d 897, 902 (Utah 2012) (internal quotation marks omitted). "Policy terms are harmonized with the policy as a whole, and all provisions should be given effect if possible." *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 686 (Utah 1999).

"Utah courts have long held that 'insurance policies should be construed liberally in favor of the insured . . . so as to promote and not defeat the purposes of insurance.'" *Fire Ins. Exch. v. Oltmanns*, 285 P.3d 802, 805 (Utah Ct. App. 2012) (quoting *U.S. Fid. & Guar. Co. v. Sandt*, 854 P.2d 519, 521 (Utah 1993)). As a result, "ambiguous or uncertain language in an insurance contract . . . should be construed in favor of coverage." *Sandt*, 854 P.2d at 522. Courts must, however, "enforce an unambiguous contract and may not rewrite an insurance contract if the language is clear." *Crook*, 980 P.2d at 687 (alteration and internal quotation marks omitted). An insurer therefore may include provisions barring coverage for certain losses; but even so, "provisions that limit or exclude coverage should be strictly construed against the insurer." *Oltmanns*, 285 P.3d at 805 (quoting *Sandt*, 854 P.2d at 523). "In strictly construing exclusions, [Utah courts] give them effect only when they use 'language which clearly and unmistakably

communicates to the insured the specific circumstances under which the expected coverage will not be provided.'" *Id.* (quoting *Crook*, 980 P.2d at 686).

## 2. Application

To begin, we acknowledge that neither the Policy nor the parties' briefing in the trial court or on appeal is a model of clarity. This imprecision is responsible for the divergent views of the majority, the dissent, and the trial court concerning the issues and arguments advanced, as well as the meaning of the Policy itself. Although each opinion evidences a thoughtful look at the language of the Policy and the parties' arguments, little agreement has been reached. With that backdrop, we begin by outlining the few points of consensus.

The parties agree on the general analytical framework applicable to the question of whether Mr. Wheeler's claimed loss is covered under the Policy. They assume that, even if the loss does not *also* fall under Exclusion 3, it was caused by "wear and tear," "mechanical breakdown," or "rust or other corrosion," such that it falls under Exclusion 7, unless the Exception to Exclusion 7 applies. Thus, both parties organize their arguments around the premise that, for Mr. Wheeler's loss to be covered under the Policy, it must both (1) fall outside the scope of Exclusion 3 *and* (2) fall inside the scope of the Exception to Exclusion 7. The trial court agreed with this general framework, reasoning that it must decide, first, whether Exclusion 3 is ambiguous, and then, if it is not, whether Mr. Wheeler's loss falls under Exclusion 3 or, instead, the Exception to Exclusion 7.

14

Accordingly, we will analyze Mr. Wheeler's claim under each of these provisions in turn, discussing the trial court's reasoning and the parties' arguments as we go.

a. *Exclusion 3*

Under Exclusion 3 of the Policy, Allstate disclaimed responsibility for damage "consisting of or caused by . . . [s]eepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water . . . from, within or around any plumbing fixtures, including . . . sinks."

Despite Allstate's assertion to the contrary, Mr. Wheeler does not challenge on appeal the trial court's conclusion that this provision is unambiguous. Rather, Mr. Wheeler's appellate position is consistent with his alternative position below that, even if Exclusion 3 is deemed unambiguous, the short-term damages he is claiming do not fall within its reach and instead fall within the Exception to Exclusion 7. In other words, Mr. Wheeler accepts the trial court's construction of the Policy—that Exclusion 3 eliminates coverage for damage caused by the continuous leakage of water over a period of weeks or longer, and that damage which is excluded under Exclusion 3 cannot be recovered under the Exception to Exclusion 7. But he takes the position that this interpretation simply does not speak to the short-term damages he seeks to recover, which are by policy definition not caused by seepage. Mr. Wheeler further concedes that *if*, as the trial court found, it is not possible to reliably distinguish short-term damage from long-term damage to which Exclusion 3 does apply, then his short-term damages cannot be recovered. He

15

claims, however, that the trial court impermissibly made a factual finding on the severability issue despite his expert's testimony that severance is possible.[5]

Given that no party argues otherwise, we will assume for purposes of this appeal that the language of Exclusion 3 is unambiguous. *Cf. Am. Concept Ins. Co. v. Jones*, 935 F. Supp. 1220, 1225–26 (D. Utah 1996) (finding materially identical provision unambiguous under Utah law). What we cannot accept, however, is Allstate's assumption, clearly implicated in its arguments here and in the trial court, that if Exclusion 3 of the Policy is deemed unambiguous, Mr. Wheeler cannot recover. These

---

[5] In the dissent's view, the trial court determined, as an independent conclusion of law, that if a water release causes any damage that falls under the plain language of Exclusion 3, then Exclusion 3 bars recovery of all damage associated with that water release, regardless of whether the damage was fully inflicted within a matter of days. And because Mr. Wheeler does not explicitly articulate, and then refute, that supposed conclusion, the dissent believes we must accept it as unchallenged and, here, dispositive.

But we do not see this conclusion expressed, let alone explained, anywhere in the trial court's order. To be sure, this view of the Policy would have led the trial court to the result it reached, and it certainly is feasible that this conclusion, though unexpressed, could have informed the reasoning the court did express. However, we think the better reading of the trial court's order—one which, at the very least, we cannot penalize Mr. Wheeler for gleaning—is that the court's finding that the short- and long-term damages could not reliably be distinguished was central to its conclusion that Mr. Wheeler's damages are barred by Exclusion 3. Indeed, every time the trial court discussed Exclusion 3's application it referred to "long term loss," "loss . . . over an extended period of time," or "long-term water damage." Given the parties' focus in their summary judgment briefing on pre- and post-"weeks" damages, and Mr. Wheeler's argument that under the plain language of the Policy his short-term damages are covered, we consider the trial court's finding as to severability essential to its conclusion that Mr. Wheeler suffered only long-term damages that fall under Exclusion 3.

And in any event, Mr. Wheeler clearly asserts here, as he did below, that his short-term damages are not barred by Exclusion 3. Thus, Mr. Wheeler advocates an interpretation of a contract that runs counter to the trial court's interpretation of the same contract, squarely presenting to us a legal issue that we review de novo. Under these circumstances, we disagree with the dissent's conclusion that Mr. Wheeler has waived any argument critical to his ability to succeed on appeal.

are not equivalent, interchangeable conclusions—to say that Exclusion 3 is unambiguous is not to say, automatically, that it embraces the damages Mr. Wheeler is claiming. To the contrary, we agree with Mr. Wheeler, for the reasons set forth below, that Exclusion 3 does not apply to his short-term damages; and even if the exclusion could be interpreted otherwise, we would be bound under Utah law to construe it in Mr. Wheeler's favor. *See Oltmanns*, 285 P.3d at 805; *cf. Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 41 (2008) (noting that state's reading of a statute was "more natural" but declining to decide whether the statute was ambiguous because, even if it was, the ambiguity must be resolved in the state's favor).

In interpreting Exclusion 3, we construe its language from the perspective of an ordinary insurance purchaser, *see Sandt*, 854 P.2d at 523, mindful that exclusionary provisions except only what they clearly and unmistakably embrace, *see Oltmanns*, 285 P.3d at 805. Exclusion 3 provides in relevant part that Allstate does not cover household damage "caused by . . . [s]eepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years." This language "clearly and unmistakably communicates to the insured," *Crook*, 980 P.2d at 686, that damage "caused by" weeks or months of continuous leakage is excluded, and no party disagrees. But by extension, then, it is equally plain that damage *not* "caused by" weeks or months of leakage—or, to phrase it differently, damage "caused by" *less than* weeks of leakage—is *not* excluded. And because the parties concur that "weeks," plural, must at the very least mean two weeks, we agree with Mr. Wheeler that, by its terms, Exclusion 3 does not clearly and unmistakably apply to damage caused by less than 14 days of leakage.

17

Allstate's expert insurance adjuster agreed with this interpretation. As the trial court stated, "in her deposition [Allstate's expert] agreed with [Mr. Wheeler]'s counsel's question that any damage that would have occurred during the first 13 days would be covered under [Mr. Wheeler]'s policy."

Nonetheless, Allstate maintains on appeal that Mr. Wheeler's claimed damages are barred under Exclusion 3. First, Allstate asserts Mr. Wheeler cannot recover the damages he alleges were beyond repair within 13 days because Exclusion 3 "does not state that coverage is afforded for damages that occur in the first thirteen days." But this contention turns Utah's rule of interpretation on its head. Under Utah law, exclusionary provisions must explicitly define the circumstances under which coverage will be denied and are "strictly construed against the insurer." *See Oltmanns*, 285 P.3d at 805 (internal quotation marks omitted). Thus, mere silence in an exclusion does not bar coverage.

And Allstate's main line of reasoning misses the central point of Mr. Wheeler's position. As noted above, after wrongly asserting that Mr. Wheeler is claiming Exclusion 3 is ambiguous, Allstate argues Exclusion 3 is unambiguous and assumes that to reach that conclusion is to further conclude Exclusion 3 applies to all of Mr. Wheeler's damages. From this vantage point, Allstate contends the factual question of whether short-term damages can be isolated and separately established, while disputed, is immaterial. Allstate contrasts this "immaterial" factual dispute with what it describes as "the undisputed *material* facts" which, in Allstate's view, properly informed the trial court's conclusion that Exclusion 3 precludes coverage here. In sum, Allstate expresses its view of the exclusion's application in this case as follows:

18

> Exclusion [3] makes clear that the [P]olicy does not cover loss to property caused by the seepage or leakage of water from a plumbing system occurring over a period of weeks or months. The loss to Mr. Wheeler's cabin resulted from the leakage of water from a plumbing system . . . that occurred over a period of weeks or months. Mr. Wheeler cannot, and has not, disputed these *material* facts, or cited to a case anywhere in the country to support his contention [that Exclusion 3 is ambiguous].

But while there is nothing particularly objectionable about the first of these sentences—in that it fairly encapsulates the meaning of Exclusion 3 in general terms—the latter sentences misapprehend Mr. Wheeler's stance as to the central dispute in this case.

Mr. Wheeler's position is that the loss he seeks to recover, as opposed to other loss he admits he must absorb, did not "result from" weeks or months of leakage. Allstate appears to contend that the water release here could not have caused discrete losses to different components of Mr. Wheeler's cabin, and must be treated as one cohesive loss. That is, Allstate seemingly asserts the Policy terminates coverage when a long-term water release occurs, even absent a causal link between the duration of the release and the damages claimed. But the Policy does not support this position.

By its terms, the Policy eliminates coverage for damage, so long as that damage is "caused by" any of the events listed in several enumerated exclusionary provisions, of which Exclusions 3 and 7 are examples. Accordingly, Exclusion 3 operates to exclude from coverage any damage that is *caused by* seepage, which, as discussed, means continuous leakage over a period of 14 days or longer. Here, however, Mr. Wheeler asserts the damage he seeks to recover was "complete within the first week of the flooding." Thus, assuming this assertion is correct as a factual matter, Mr. Wheeler's claimed damage was not *caused by* leakage over a period of 14 days or longer; it was

19

caused by leakage over a period of *less than* 14 days and thus was not *caused by seepage*. As such, the damage does not clearly and unmistakably fall within Exclusion 3.

Accordingly, we depart from the reasoning of the trial court. As summarized at the outset, the trial court determined that Exclusion 3 "excludes coverage of [Mr. Wheeler]'s claim and therefore [the Exception to Exclusion 7] does not apply." But it reached this determination by concluding, in step with Allstate's approach, that Exclusion 3 is unambiguous, without explaining how it unambiguously excludes short-term damage. Yet, the trial court agreed with Allstate's counsel that the "only time [water damage is] not covered, the only time [Exclusion 3] comes in is when we're dealing with a long term loss." And the premise of Mr. Wheeler's argument is that he is not, in fact, seeking recovery for "long term loss." Thus, the short-term loss sought by Mr. Wheeler, if capable of being severed from the long-term loss, actually falls outside the trial court's interpretation of Exclusion 3.

Nor are we persuaded by the trial court's reliance on decisions holding that, when a provision like Exclusion 3 applies, it supersedes a provision like the Exception, and coverage is excluded. *See Schwartzenfeld v. Nationwide Mut. Fire Ins. Co.*, No. 296752, 2011 WL 1565466 (Mich. Ct. App. Apr. 26, 2011) (per curiam) (unpublished); *Marsh v. Am. Family Mut. Ins. Co.*, 218 P.3d 573 (Or. Ct. App. 2009).[6] According to the trial court, these cases' "reasoning is in line with Allstate's arguments . . . that if [Mr. Wheeler] had discovered his loss in a more timely fashion, perhaps there would have

---

[6] In their filings below and their briefs on appeal, the parties discuss a third case that stands for the same proposition. *See Hall v. Am. Indem. Grp.*, 648 So.2d 556 (Ala. 1994).

20

been coverage but because [Mr. Wheeler]'s loss was over an extended period of time, the exclusionary language precludes [Mr. Wheeler]'s recovery." "Therefore," the court stated, "the exception[] do[es] not apply."

But this approach assumes the answer to the disputed issue here—namely, that Exclusion 3 applies to Mr. Wheeler's claimed loss. In order for the court to conclude that Mr. Wheeler's "loss was over an extended period of time" and thus barred under Exclusion 3, it needed to reject Mr. Wheeler's argument that he could meaningfully distinguish between short-term and long-term water damage in a situation involving at least some long-term damage. And the trial court did exactly that, stating

> the Court finds [Mr. Wheeler]'s argument that they are [sic] only claiming loss for the first few days of water damage to have no effect on the Court's decision *based upon the facts of this case*. Because the damage to [Mr. Wheeler]'s cabin was so extensive and was not found for at least 60–70 days, *it is difficult if not impossible for the Court to determine exactly what amount of damage would have occurred in the first few hours and days*.

(Emphases added.) As even Allstate concedes, however, the separability of short- and long-term water damage is a disputed factual question in this case: Allstate's insurance expert opined that there was no way to determine these damages separately, but Mr. Wheeler's mechanical and plumbing expert reported that he could, in fact, make that determination. Thus, this factual dispute was not "for the Court to determine" on summary judgment.

The trial court's reliance on authorities "that found coverage to be specifically excluded for long-term water damage" under similar insurance provisions does not convince us otherwise. Again, this statement assumes that Mr. Wheeler suffered only

21

"long-term water damage," which all parties agree is unambiguously precluded by Exclusion 3. More importantly, however, all of the cases cited in the trial court's order (and the parties' briefs) involve claims for damage that was undisputedly caused by leakage over a period of weeks, months, or years. *See Am. Concept*, 935 F. Supp. at 1223, 1226 (cracking and settling of walls and foundation caused by sustained saturation of soil beneath home due to leak at connection in pipe that persisted for two years); *Hall v. Am. Indem. Grp.*, 648 So.2d 556, 558–59 (Ala. 1994) (structural damage to foundation and basement walls caused by leak that continued for years and by water pressure from burst pipe, involving policy with seepage exclusion and separate exclusion for damage to foundation from water pressure); *Schwartzenfeld*, 2011 WL 1565466, at *1 (water damage to downstairs ceilings caused by years of leakage through crevice around bath tub that rotted subfloors of bathroom before showing through on ceilings); *Marsh*, 218 P.3d at 574–75, 577 (rotted floor under shower caused by leak in shower membrane that persisted for at least months, and likely years). None involved a claim for damage caused during the first week of leakage or an argument that such damage can be severed from the long-term damages and therefore falls outside a provision like Exclusion 3. *See Am. Concept*, 935 F. Supp. at 1225–26; *Hall*, 648 So.2d at 558–59; *Schwartzenfeld*, 2011 WL 1565466, at *1–3; *Marsh*, 218 P.3d at 574–75, 577–78. Thus, none of them supports the notion that short-term water damage cannot be isolated and reliably proved, and none suggests Exclusion 3 applies to the short-term loss Mr. Wheeler seeks to recover in this case.

It is also true, as discussed, that Exclusion 3 is silent on the issue, meaning it does not clearly and unmistakably exclude damages caused by leakage or seepage for less than weeks, month, or years. Accordingly, if Mr. Wheeler can segregate his short-term losses from his long-term losses, the short-term losses are not barred by the unambiguous language of Exclusion 3.

It follows from this discussion that Mr. Wheeler's asserted factual dispute affects whether Exclusion 3 applies. We must next determine, then, whether Mr. Wheeler's short-term damage, if he can separately establish it, would be covered under the Exception to Exclusion 7.

b. *Exception to Exclusion 7*

The trial court concluded Mr. Wheeler's damages were excluded under Exclusion 3 and therefore did not construe the Exception to Exclusion 7 or analyze its application to the present facts. Nonetheless, the parties address this issue in their briefs, and we consider it to determine if we can affirm on this alternative ground.[7]

---

[7] Mr. Wheeler assumed in his opening brief that the escape of water from the pipe in his basement was undisputedly "sudden and accidental" within the meaning of the Exception to Exclusion 7. It was only after Allstate argued to the contrary in its answer brief that Mr. Wheeler, in his reply brief, provided substantive analysis on this point and argued that whether the water's release was "sudden and accidental" is a disputed issue of fact. Although we usually choose not to consider arguments raised for the first time in a reply brief, *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000), we conclude the reasons for applying this discretionary rule of abstention are not present here.

For one, the trial court expressly declined to decide whether the escape of water in this case was sudden and accidental, so there was no determination contrary to Mr. Wheeler's position to which a response clearly was required. But more importantly, this is not a situation in which the appellee has been deprived of an opportunity to respond to a new argument or characterization of the record, or in which we need "protect[ion] . . . from publishing an erroneous opinion" with respect to the law or the facts. *Id.*; *see also*

There is no dispute that the damage at issue here falls within Exclusion 7 and therefore must also be within the scope of the exception to that exclusion to be covered under the Policy. The Exception states:

> If any of a) through h) *cause the sudden and accidental escape of water* or steam from a plumbing . . . system within your dwelling, *we cover the direct physical damage caused by the water* or steam. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of your dwelling necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

(Emphases added.)

Interpreting this language, Allstate says the Exception "provides coverage for water loss if such loss was 'sudden and accidental,'" and argues the fact that "Mr. Wheeler does not dispute that it took him [60–70] days to discover the water loss . . . compels the conclusion that the loss was not 'sudden and accidental.'" Allstate then references three cases in which this court interpreted the phrase "sudden and accidental," arguing they establish that the phrase is unambiguous and does not embrace Mr. Wheeler's loss here. *See Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522 (10th Cir. 1995); *Anaconda Minerals Co. v. Stoller Chem. Co.*, 990 F.2d 1175

--------

*id.* (stating the reasons for the usual rule are to avoid "rob[bing] the appellee of the opportunity to demonstrate that the record does not support an appellant's factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result"; and to "protect[] this court from publishing an erroneous opinion because we did not have the benefit of the appellee's response"). The parties' appellate arguments on this issue are the same as the ones they made before the trial court, and Mr. Wheeler's reply brief discusses only the cases addressed in Allstate's answer brief, all of which also were discussed below.

(10th Cir. 1993); *Hartford Accident & Indem. Co. v. U.S. Fid. & Guar. Co.*, 962 F.2d 1484 (10th Cir. 1992).

Allstate is correct that, under controlling caselaw, the phrase "sudden and accidental" is unambiguous. Contrary to Allstate's reading, however, that precedent does not support Allstate's position that the Exception to Exclusion 7 is inapplicable here. Indeed, one case in particular is substantially on point and firmly establishes that Mr. Wheeler's claimed loss, if provable, is covered under the Exception.

In *Gridley Associates, Ltd. v. Transamerica Insurance Co.*, the plaintiff owned a gas station which, from November 1985 to February 1986, recorded a shortfall of approximately 12,000 gallons between the volume of gasoline actually sold and the volume purchased and stored in the station's underground tank. 828 P.2d 524, 524–25 (Utah Ct. App. 1992). Concerned, the plaintiff hired a company in early February 1986 to inspect the station's fuel system, and it concluded "there was a gasoline leak resulting from a broken pipe which connected the gasoline storage tank with the gasoline [pumps]." *Id.* at 525. The evidence established that "the break in the pipe was a 'clean break' that 'would have had to have been caused by an adjustment of the area in which it is in.'" *Id.*

The plaintiff filed a claim with its general liability insurer for the cost of environmental cleanup. *Id.* The policy contained a pollution exclusion which disclaimed coverage for "property damage arising out of the discharge, dispersal, release or escape of [various pollutants] into or upon land." *Id.* But the exclusion contained the following exception: "this exclusion does not apply if such discharge, dispersal, release or escape is

25

sudden and accidental." *Id.* The insurer denied coverage under the exclusion, and the plaintiff sued. *Id.* The trial court found the insurer liable under the exception to the exclusion, and the insurer appealed. *See id.* at 525–26.

The sole issue on appeal was whether the gasoline leak was "sudden," within the meaning of the phrase "sudden and accidental." *Id.* at 526. Like Allstate does here, the insurer in *Gridley* maintained that the leak "was not 'sudden' because it continued for an extended period of time." *Id.* Casting the issue as one of first impression in Utah, the Utah Court of Appeals determined that the word "sudden," as used in the phrase "sudden and accidental," has an unambiguous meaning. *Id.* at 527. Reading the terms together, the court concluded that for a "discharge, dispersal, release or escape" to have been "sudden and accidental," it must have been both quick or abrupt *and* unexpected or unintentional. *See id.*

Applying this understanding to the facts of that case, the *Gridley* court concluded that the gasoline leak was "sudden and accidental" and therefore fell within the exception to the policy's pollution exclusion. *Id.* The court noted that the evidence suggested the break in the pipe was a "clean break," which would have "resulted in an unexpected as well as an immediate and abrupt flow of gasoline from the severed line," as opposed to a break slowly caused by corrosion "which would have resulted in a gradual drip or trickle of gasoline from the line." *Id.* Critical for our purposes here, the court had this to say of the fact that the leak persisted for a long period of time:

> [The insurer]'s argument that the discharge could not possibly have been "sudden" because the spill lasted for an extended period of time *is without merit*. While the record . . . indicates that although the break in the line

26

occurred in approximately November 1985 and was not discovered by [the plaintiff] until early February 1986, the explicit language of [the plaintiff]'s policy only requires that *the discharge itself* be "sudden" in order to be covered under the policy. *The length of time that elapses before the leak is discovered is irrelevant, as to the suddenness of the discharge.* . . . Accordingly, in the case at bar, where there was damage to a line which caused an immediate spill of gasoline into the ground that remained undiscovered by [the plaintiff] for some months, the discharge itself was still "sudden" as contemplated by the exception to the pollution exclusion.

*Id.* at 527–28 (emphases added) (citations and internal quotation marks omitted).

One need only replace "gasoline" with "water" to know what Utah law prescribes in the present case. Like the exception in *Gridley*, the "explicit language" of which required that the "escape" *itself* be sudden and accidental, the Exception to Exclusion 7 plainly focuses on the escape itself: it states that damage caused by "the sudden and accidental *escape* of water or steam from a plumbing . . . system" is exempt from Exclusion 7. (Emphasis added.) Allstate's argument that the *loss* caused by the escaped water was not sudden and accidental is thus beside the point. Moreover, the undisputed evidence shows that the escape of water into Mr. Wheeler's cabin began when a pipe under the basement sink burst due to a failed valve and that the release of water was "immediate and abrupt," rather than "a gradual drip or trickle": when the leak was found, "water was spraying out everywhere" and the spray shot out "about 2–3 feet." *Gridley* plainly instructs that, under these circumstances, the "escape of water" was "sudden and accidental" within the meaning of the Exception, regardless of whether the leak went undiscovered for 60–70 days.

The *Quaker State* / *Anaconda* / *Hartford* line of cases, in which this court applied Utah law to pollution provisions similar to the one in *Gridley*, does not suggest otherwise.

27

In the first of those cases, *Hartford*, this court noted that the Utah Supreme Court had not yet interpreted the phrase "sudden and accidental" in the context of an insurance exclusion, and that it was therefore this court's responsibility to "give the clause the interpretation we believe the Utah [Supreme] [C]ourt would." 962 F.2d at 1487. Ultimately, we settled on the interpretation provided by the Utah Court of Appeals in *Gridley*. *Id.* at 1490. The *Anaconda* and *Quaker State* decisions subsequently employed that interpretation, too. *Quaker State*, 52 F.3d at 1528; *Anaconda*, 990 F.2d at 1177–79.

In all three cases, this court applied the interpretation "that 'sudden and accidental' unambiguously means 'abrupt or quick and unexpected or unintended,'" *e.g.*, *Quaker State*, 52 F.3d at 1258, to largely analogous fact patterns: plaintiffs claiming that numerous discharges of pollution over a decade or more should be covered under exceptions to pollution exclusions in their insurance policies. *E.g.*, *id.* at 1524–27. And in each case, this court determined that such discharges were not covered because, "under Utah law continuous, routine, or gradual discharges of pollutants are not 'abrupt' or 'quick' and thereby not 'sudden' within the meaning of 'sudden and accidental.'" *Id.* at 1528 (citing *Anaconda*, 990 F.2d at 1179; *Hartford*, 962 F.2d at 1489, 1492).

Although the focus on "continuous" and "gradual" might otherwise have implied that a single, lasting leak could not be "sudden and accidental," in each case the court's holding was premised on, and limited to, long-term, repeated discharges attendant to the routine business operations of the plaintiffs. *E.g.*, *id.* at 1528–30; *Hartford*, 962 F.2d at 1489, 1492. Indeed, this court recently characterized *Quaker State*, *Anaconda*, and

28

*Hartford* as cases that hinged on "the routine commercial activities of the insured."

*Headwaters Res., Inc. v. Ill. Union Ins. Co.*, 770 F.3d 885, 896 (10th Cir. 2014).

And even if these cases could be read broadly to suggest leaks like the ones here and in *Gridley* cannot be considered "sudden and accidental" as a categorical matter, the Utah Supreme Court has subsequently foreclosed that reading. *See Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127 (Utah 1997). In *Sharon Steel*, the Utah Supreme Court expressly approved of and reaffirmed *Gridley*. *Id.* at 135. It also approved of the *Quaker State* line of cases, but only after characterizing the reasoning of those cases as "focused on whether the pollution was a 'concomitant' of regular business activity rather than a series of unrelated accidents." *Id.* at 136. Thus here, we need not parse our precedent "to determine, as best we can, how this issue would be resolved by the Utah Supreme Court." *Quaker State*, 52 F.3d at 1527. The Utah Supreme Court has spoken, and *Gridley* controls: because the escape here was sudden and accidental, it triggers the Exception to Exclusion 7, even though it remained undetected for an extended period.

\*　　\*　　\*

We therefore conclude that, if Mr. Wheeler can prove the damages he is seeking were caused within the first 13 days of the release, then the damages fall outside Exclusion 3 and inside the Exception to Exclusion 7. In that situation, the damages would be covered under the Policy and Allstate would have breached the Policy by denying coverage. Viewing the evidence in the light most favorable to Mr. Wheeler, a reasonable jury could find that the short- and long-term damages are, in fact, separable. Accordingly,

29

we conclude there is a genuine dispute of material fact that should have precluded the trial court's grant of summary judgment on the breach of contract claim.

## B. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

Having determined summary judgment was not appropriate on the breach of contract claim, we must next consider whether summary judgment was appropriate as to the claim for breach of the implied covenant of good faith and fair dealing. The parties' arguments here focus on whether Allstate in fact complied with its duty of good faith and, alternatively, whether Mr. Wheeler's insurance claim was "fairly debatable," such that Allstate could not have acted in bad faith in denying coverage.[8] After stating the relevant law, we address each of these questions in turn, concluding that summary judgment was not warranted on this claim.

Under Utah law, the implied covenant of good faith in the insurance context "contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim." *Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 533 (Utah 2002) (internal quotation marks omitted). These duties account for the fact that "the overriding requirement imposed by the implied covenant is that insurers act reasonably, as an objective matter, in dealing with their insureds." *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996). Thus, "[i]f

---

[8] Allstate also asserts that the claim should fail because Mr. Wheeler's complaint "only made one general allegation" in support of it. But as Mr. Wheeler notes, this case is at the summary judgment stage, where the parties must move beyond the pleadings. The record shows Mr. Wheeler moved well beyond "one general allegation" at the summary judgment stage.

an insurer acts reasonably in denying a claim, then the insurer did not contravene the covenant." *Prince*, 56 P.3d at 533. In Utah, "[w]hether there has been a breach of good faith and fair dealing is a factual issue, generally inappropriate for decision as a matter of law." *Blakely v. USAA Cas. Ins. Co.*, 500 F. App'x 734, 739 (10th Cir. 2012) (unpublished) (alteration in original) (quoting *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 968 (Utah 2008)).

Applied here, these considerations lead us to conclude that the issue of Allstate's compliance with its duty of good faith is a question of fact best left for the jury. Although the trial court's statement that Allstate "acted diligently, reasonably, fairly and promptly in denying [Mr. Wheeler]'s claim" tracks the language used to describe insurers' duties under Utah law, *see Prince*, 56 P.3d at 533, Mr. Wheeler correctly notes that the court did not specifically discuss the parties' evidence on the issues of diligent investigation and fair evaluation. Rather, the trial court appears to have based its determination that Allstate's actions were reasonable largely on its prior conclusion that Mr. Wheeler's loss plainly falls under Exclusion 3 of the Policy. But because we have rejected that rationale, and considering the evidence in the light most favorable to Mr. Wheeler, we cannot say that no reasonable juror could find Allstate failed to diligently investigate and fairly evaluate whether any damage in Mr. Wheeler's cabin was covered. *See Jones v. Farmers Ins. Exch.*, 286 P.3d 301, 303–06 (Utah 2012).

To that end, Mr. Wheeler presented testimony from an insurance expert opining that Allstate acted unreasonably in approaching Mr. Wheeler's claim "from a position of prematurely denying coverage." Mr. Wheeler's evidence also showed that Allstate's

31

investigating adjuster "spent 'ten minutes tops' at the cabin and 'took like two or three pictures and left.'" Allstate, on the other hand, presented the adjuster's report and the rebuttal testimony of its own insurance expert, both of which support its claim that it acted reasonably. In short, the evidence concerning the reasonableness of Allstate's actions was disputed.

That said, we must next consider whether summary judgment was nonetheless appropriate because, as Allstate argues, Mr. Wheeler's claim was "fairly debatable."[9] Under Utah law, "when an insured's claim is fairly debatable, the insurer is entitled to debate it and cannot be held to have breached the implied covenant [of good faith and fair dealing] if it chooses to do so." *Billings*, 918 P.2d at 465. In other words, "as long as the appropriateness of coverage was 'fairly debatable at the time it was denied,' an insurer does not breach the duty of good faith simply because a court later determines the insurer wrongly denied coverage." *Blakely*, 500 F. App'x at 738 (quoting *Billings*, 918 P.2d at 465).

Allstate asserts that the "fairly debatable" defense bars Mr. Wheeler's bad faith claim because, at the very least, the evidence presented here "create[s] a factual issue as to the validity of [Mr. Wheeler]'s water loss claim." *See also Prince*, 56 P.3d at 535 ("[I]f the evidence presented creates a factual issue as to the claim's validity, there exists a debatable reason for denial, . . . eliminating the bad faith claim." (alteration in original)

---

[9] Although Allstate argued this "fairly debatable" rationale below, the trial court's order did not address it.

(internal quotation marks omitted)). But Allstate misapprehends the Utah precedent addressing the fairly-debatable defense.

In *Jones v. Farmers Insurance Exchange*, the Utah Supreme Court admonished that the factual-issue-as-to-the-claim's-validity standard for demonstrating that an insurance claim is "fairly debatable" must be strictly applied at the summary judgment stage. *See* 286 P.3d at 304. *Jones* involved a plaintiff who submitted a claim to his insurer seeking $14,000 in dental treatment for an injury allegedly sustained in a car crash that occurred four years earlier. *Id.* at 302–03. The plaintiff's dentist sent the insurer a report in which the dentist attributed the plaintiff's injury (cracked teeth) to the car crash. *Id.* The insurer, after noting that the plaintiff's emergency-room report showed no facial trauma at the time of the accident and that the insurer "would have expected multiple fractured teeth to cause some pain or discomfort during the 4 years," denied the claim. *Id.* at 303. The plaintiff sued, and the insurer moved for summary judgment on the plaintiff's bad faith cause of action, arguing that the plaintiff's insurance claim was fairly debatable. *Id.* The trial court granted the insurer's motion, but the Utah Supreme Court reversed.

The court cautioned that the fairly-debatable defense is all but precluded on summary judgment where the alleged factual dispute as to coverage is premised not on conflicting evidence, but on the *quality* of the insured's claim, which by extension implicates the insurer's reasonableness in denying coverage. *See id.* at 304–05. In such situations, summary judgment is proper only where "reasonable minds could not differ as to whether the insurer's conduct measured up to the required standard of care." *Id.* at 305. The Utah Supreme Court explained that to justify application of the fairly-debatable

33

defense at the summary judgment stage, there must be a legitimate factual dispute on which coverage under the insurance policy hinges and on which the insurer *actually possessed* conflicting evidence when it denied the claim. *See id.* at 305–06. The *Jones* court identified *Prince* and *Callioux v. Progressive Insurance Co.*, 745 P.2d 838 (Utah Ct. App. 1987), as cases in point.

Comparing the facts of these cases to the facts here, we do not believe Mr. Wheeler's insurance claim was "fairly debatable" as a matter of law, so as to justify summary judgment on the bad faith claim. While we agree with Allstate that coverage under the policy hinges on a genuine dispute of fact on which the parties have submitted evidence, none of that evidence was in hand *at the time the claim was denied*. Thus, unlike the insurers in *Prince* and *Callioux*, both of which denied insureds' claims *after* receiving expert reports indicating there was no coverage, *see Prince*, 56 P.3d at 529; *Callioux*, 745 P.2d at 839, 842, Allstate did not have any objective evidence indicating there was no coverage at the time it denied the claim. Thus, *Jones* instructs that summary judgment is not appropriate unless "reasonable minds could not differ" on whether Allstate complied with its duties of diligent investigation, fair evaluation, and reasonable and prompt disposition. 286 P.3d at 305. And as discussed above, we cannot conclude the evidence on these questions is so lopsided that they may be determined as a matter of law.

## IV.  CONCLUSION

For the foregoing reasons, we reverse the trial court's order granting summary

judgment for Allstate and remand for further proceedings consistent with this opinion.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

15-4159, *Wheeler v. Allstate Insurance Company, et al.*

**MORITZ**, Circuit Judge, dissenting:

I read Wheeler's opening brief to raise a single challenge to the district court's ruling that the Policy doesn't cover the short-term damage to the cabin: Wheeler asserts that the district court erred in overlooking a genuine dispute of material fact. In support, Wheeler points to his expert's opinion that "the water damage to walls, cabinets, and other water[-] absorbing materials was beyond repair within less than a week." Aplt. App. 143. And in light of this evidence, Wheeler argues, the district court erred when it concluded that it was impossible "to determine exactly what amount of damage would have occurred in the first few hours and days" of the leak. *Id.* at 153.

Wheeler is correct that the district court erred when it suggested a reasonable jury would be unable to attribute at least some of the damage to the first 13 days of the leak. But as I read the district court's order, this erroneous factual finding is only one of the two independent bases the district court provided for granting Allstate's motion for summary judgment. And while I agree with the majority that Wheeler successfully challenges the first of these two independent bases for the district court's ruling, I would find that Wheeler fails to acknowledge—let alone challenge—the second.

In granting Allstate's motion for summary judgment, the district court began by framing the question before it as whether the Policy "should cover *any* of the damage to [the] cabin." Aplt. App. 137 (emphasis added). The district court then

clarified its understanding of Wheeler's position, stating, "[Wheeler] is only seeking relief for the [short-term] damage" to the cabin. *Id.* at 145. Based on this language, it is clear that the district court understood Wheeler to be arguing that Exclusion 3 doesn't apply to damage that occurs within the first 13 days of a leak if that leak ultimately persists for 14 days or more.

Critically, the district court then explicitly (and repeatedly) rejected this interpretation of Exclusion 3 as a matter of law. For instance, the court stated that it "disagree[d] with [Wheeler's] attempt to persuade the [c]ourt to construe the language [of Exclusion 3] in a more subtle, fine-tuned manner that favors . . . recovery and ignores the contract's plain language." *Id.* at 146. And it ruled that Exclusion 3 isn't "fairly susceptible to the interpretation [Wheeler] suggest[ed]." *Id.* at 148. In other words, the district court unambiguously ruled that when a leak lasts 14 days or more, Exclusion 3 applies to *all* of the damage the leak causes—even the damage that occurs within the first 13 days: the district court stated, "The policy language works to preclude coverage for exactly the type of damage that occurred in this case . . . ." *Id.* at 153.

The majority correctly points out that the district court *also* stated that it found it "difficult if not impossible . . . to determine exactly what amount of damage would have occurred in the first few hours and days" of the leak. Maj. Op. 10 (quoting Aplt. App. 153). But in my opinion, the district court made it clear that this factual finding constituted an alternative basis for its ruling that Wheeler isn't entitled to coverage. *See* Aplt. App. 153 (reiterating that "[*i*]*n addition*" to its factual finding, the district

2

court was also granting Allstate's motion based on its independent legal conclusion that Exclusion 3 applies to all damage—including short-term damage—that occurs when a leak ultimately lasts 14 days or more (emphasis added)).

Thus, I read the district court's order to provide two independent bases for granting Allstate's motion for summary judgment: (1) a reasonable jury would be unable to discern what damage occurred within the first 13 days of the leak, and (2) even assuming that a reasonable jury could make such a factual finding, Exclusion 3 would nevertheless unambiguously operate to preclude coverage for the short-term damage.

But Wheeler doesn't even acknowledge this second aspect of the district court's ruling in his opening brief, let alone attempt to challenge it.[1] Accordingly,

---

[1] The majority opinion nevertheless undertakes an analysis of the district court's legal conclusion that Exclusion 3 doesn't apply to short-term damage when a leak lasts at least 14 days. For instance, the majority reasons that any damage that occurs within the first 13 days of such a leak isn't "*caused by* leakage over a period of 14 days or longer." Maj. Op. 20. And the majority addresses and attempts to distinguish the cases the district court relied on in rejecting Wheeler's assertion that Exclusion 3 doesn't apply to short-term damage caused by a leak that ultimately lasts at least 14 days. *See id.* at 20-23.

As discussed below, *see infra* at 5-6, I disagree with the majority's interpretation of Exclusion 3, *see* Maj. Op. 20. But more significantly, I disagree with the majority's decision to reach that interpretation (and to ultimately reverse the district court's decision) based on an analysis that doesn't appear anywhere in Wheeler's opening brief. When an appellant fails to "explain what was wrong with the reasoning that the district court relied on in reaching its decision," we typically decline to do that work on the appellant's behalf. *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) (noting that "[t]he first task of an appellant is to explain to us why the district court's decision was wrong"; affirming judgment below because "reasons that were given by the district court" for its ruling went "unchallenged" by appellant); *see Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (noting that we routinely decline "to consider arguments that are not

3

even assuming that the district court erred in finding that it would be impossible for a jury to separate the short-term damage from the long-term damage, I would affirm the district court's order granting summary judgment to Allstate on Wheeler's breach of contract claim. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004) (explaining that because plaintiff failed to challenge both of district court's two independent grounds for granting summary judgment to defendant, court didn't need to address plaintiff's challenge to first of those two independent grounds; even if plaintiff "prevail[ed] on that issue, the grant of summary judgment to [defendant] would still stand on the alternative ground which was not appealed").

Moreover, because Wheeler doesn't adequately challenge the district court's ruling that Exclusion 3 applies to both the short- and long-term damage to the cabin, I would affirm the district court's order granting summary judgment to Allstate on Wheeler's breach of contract claim without ever asking whether Exclusion 7 *also* applies to defeat coverage for the short-term loss.

Alternatively, even assuming that Wheeler has adequately challenged the district court's ruling that Exclusion 3 applies to preclude coverage for the short-term loss to the cabin, I would nevertheless affirm. Exclusion 3 applies to property loss "caused by . . . [s]eepage, meaning continuous or repeated seepage or leakage [of water] *over a period* of weeks, months, or years." Aplee. App. 312-13 (emphasis added). This language unambiguously encompasses damage that occurs at any time

raised, or are inadequately presented"). I see no compelling reason to depart from that typical practice here.

4

within that "period of weeks, months, or years"—including, critically, the first 13 days. *Id.* at 313.

Wheeler's interpretation of the Policy implicitly invites us to not only read out of Exclusion 3 the language "over a period of," *id.*, but also to read into Exclusion 3 additional language that doesn't appear there—i.e., language indicating that Exclusion 3 applies only to loss (caused by seepage or leakage) that occurs after the seepage or leakage *has lasted for* at least two weeks.

I would decline this invitation. Instead, because Wheeler seeks coverage for property loss caused by a leak that unquestionably occurred "*over a period*" of two weeks or more, I would hold that Exclusion 3 unambiguously applies to *all* of the damage the leak caused, including the damage that occurred during the first 13 days of the multi-week "period" during which the leak ultimately persisted. *Id.* (emphasis added); *see Quaid v. U.S. Healthcare, Inc.*, 158 P.3d 525, 527 (Utah 2007) (explaining that when language of exclusion is unambiguous, court will afford that language its ordinary meaning, even if the result is to deny coverage).

Finally, because Wheeler fails to demonstrate that he was entitled to coverage, I would hold that the district court didn't err in granting summary judgment to Allstate on Wheeler's claim for breach of the covenant of good faith and fair dealing. *See Jones v. Farmers Ins. Exch.*, 286 P.3d 301, 304 (Utah 2012) ("[W]hen an insured's claim is fairly debatable, the insurer is entitled to debate it and cannot be held to have breached the implied covenant [of good faith] if it chooses to do so." (second alteration in original) (quoting *Billings ex rel. Billings v. Union Bankers Ins.*

5

*Co.*, 918 P.2d 461, 465 (Utah 1996))). Because Wheeler fails to demonstrate that he's entitled to coverage, the validity of his claim was necessarily "fairly debatable," and Allstate was therefore "entitled to debate it." *Id.* (quoting *Billings*, 918 P.2d at 465).